**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joe Mack GEORGE,**
**Defendant-Appellant.**

**No. 77–5305.**

United States Court of Appeals,
Fifth Circuit.

Feb. 10, 1978.

Lucien B. Campbell, Federal Public Defender, San Antonio, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., LeRoy Morgan Jahn, Wayne F. Speck, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, GODBOLD and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

Joe Mack George appeals his conviction for possession of marijuana with intent to distribute it.[1] He contends that a roving United States Border Patrol stopped his automobile near Big Bend National Park without reasonable suspicion. He argues that marijuana seized from his automobile after the stop was a fruit of an illegal stop and was improperly admitted into evidence at trial. Because we find no meaningful distinction between this case and *United States v. Frisbie*, 5 Cir. 1977, 550 F.2d 335, we accept George's arguments and reverse the judgment of the district court.

At 1:45 in the morning of October 22, 1976, two experienced roving United States Border Patrol officers stopped defendant-appellant Joe Mack George on Highway 118 in west Texas. The government contends that several factors operating together reasonably caused the officers' suspicion. First, the agents allegedly knew that George's car was proceeding north on Highway 118 and that he had been within nine and one-half miles of the Mexican border.[2] This road is the same one involved in *United States v. Frisbie*, 5 Cir. 1977, 550 F.2d 335. The government contends that the presence of an automobile in or near this area, Big Bend National Park, is a cause for suspicion: four border crossings in this part of southwest Texas feed into Highway 118. In this area, the transportation of illegal

---

1. Such conduct violates 21 U.S.C. § 841(a)(1).

2. This information came from Chekar sensory devices implanted in the highway.

aliens is "relatively heavy", it is sparsely populated, and there is usually little traffic on Highway 118.

The government's second suspicious fact is the time of day, 1:45 a. m., when George was travelling. Allegedly this is a time when tourists and local ranchers rarely travel. Third, the government argues that George's automobile was suspicious. It was a 1973 Buick Electra, a car "larger than a compact", and it had Georgia license plates. Brief for the United States at 7. Fourth, George was the only visible occupant of his car; tourists usually travel in pairs or groups. Fifth, the officers observed no camping gear in George's Buick as it passed. Sixth, the officers did not recognize George or his car.

■ None of the government's suspicious factors distinguishes this case from *Frisbie*. As we have noted, the officers stopped George on the very road where other officers had stopped Frisbie. The different Border Patrol officers involved in the two cases suspected that Frisbie's camper, like George's car, came from the border. In each case, Chekar sensory devices informed the officers that the vehicles had been near the border and were proceeding north. *See Frisbie*, 550 F.2d at 336–38. Proximity to the border is a factor to be considered in determining whether a roving Border Patrol party had reasonable suspicion to make a stop. *United States v. Brignoni-Ponce*, 1975, 422 U.S. 873, 884, 95 S.Ct. 2574, 45 L.Ed.2d 607, 618. But proximity to the border is not sufficient in itself to justify a roving stop. "If the mere presence of a vehicle upon a public highway leading away from the border constitutes a sufficient 'reason to believe' the vehicle in fact came from the border, an untold number of innocent travelers are daily subject to inclusion in this dangerous category." *United States v. Escamilla*, 5 Cir. 1977, 560 F.2d 1229, 1232.

■ The government's second factor cannot distinguish *Frisbie* either. In *Frisbie*, the stop occurred between 6:30 and 7:00 a. m. 550 F.2d at 336. The officers stopped George's car at 1:45 a. m. "A decision to travel such roads [as Highway 118] at less busy hours should not be the difference—constitutionally speaking—determinative of the right of officers to stop vehicles". 550 F.2d at 338.

The government's other grounds for suspicion are similarly unavailing. Several of them are identical: the officers in the two cases recognized neither the driver nor the vehicle. *See* 550 F.2d at 337. Neither George nor Frisbie had either visible companions or visible camping gear. *See id.* George's car was capable of containing aliens; so was Frisbie's camper. *See id.*

The only factor that provoked suspicion of George that was not present in *Frisbie* is George's out-of-state license plates. This factor is virtually meaningless on Highway 118. Highway 118 is one of three roads that provide access to Big Bend National Park, where 331,983 visitors were counted in 1975. 550 F.2d at 338. *See United States v. Lopez*, 5 Cir. 1977, 564 F.2d 710, 712.

The weight we accord the suspiciousness of George's out-of-state plates is minute compared with the weight this Court accords a factor present in *Frisbie* but absent in this case. Frisbie was travelling in an apparent convoy of three vehicles. 550 F.2d at 336–37. Vehicles travelling together could be doing so as a smuggling team, with one or more "lead" or scout vehicles and a "load" vehicle. *United States v. Barnard*, 5 Cir. 1977, 553 F.2d 389, 392. Although a convoy of two or three cars travelling together "does not itself justify the stop, it may understandably raise the officer's suspicions". *Id.* Whatever the suspiciousness of an apparent convoy, it gives more cause for suspicion than the sight of a vehicle with Georgia plates near a national park in Texas.

Because the circumstances in *Frisbie* were at least as suspicious as those that provoked the stop of George's car, we cannot distinguish that case. A majority of a panel of this Court in two recent cases recognized the viability of *Frisbie* but found

it distinguishable on the facts.[3] *United States v. Villarreal*, 5 Cir. 1978, 565 F.2d 932; *United States v. Almand*, 5 Cir. 1978, 565 F.2d 927. Since we cannot distinguish *Frisbie*, we must reverse George's conviction.

REVERSED AND REMANDED.

---

**3.** *But see* the dissents in these two cases.