577 F.2d 963
 UNITED STATES of America, Plaintiff-Appellee,
v.
Anton Edwin HOSCH, Jr., Defendant-Appellant.
 No. 76-2449.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 7, 1978.
 
 Douglas Tinker, Donald Dailey, Corpus Christi, Tex., for defendant-appellant.
 J. A. Canales, U. S. Atty., James R. Gough, George A. Kelt, Jr., Michael J. Brown, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before BROWN, Chief Judge, GEWIN and TJOFLAT, Circuit Judges.
 TJOFLAT, Circuit Judge:
 
 
 1
 Appellant Anton Edwin Hosch, Jr., was convicted in the district court for possession of approximately 480 pounds of marijuana with intent to distribute, a violation of 21 U.S.C. § 841(a)(1) (1976). In this appeal, Hosch contends that the stop and subsequent search of his car, which revealed the marijuana, were unlawful under the fourth amendment. Because the initial stop of his vehicle was reasonable and the resulting search was justified by probable cause, we affirm.
 
 
 2
 The following facts were found by the court and are supported by the evidence presented at the suppression hearing. At approximately 7:30 p. m., on October 21, 1975, Boarder Patrol officers Garza and Bustamonte were in their vehicle, which was parked adjacent to the controlled intersection of U.S. Highway 59 and State Highway 16 in the town of Freer, Texas. They observed Hosch's car, a 1969 Pontiac, approach the intersection from the south on Highway 16, stop at the traffic light, and turn onto Highway 59. As the car passed by, the officers saw only one occupant, the driver, and noticed that the rear end was riding very low. They were unable to gain a description of the driver or to identify the license plates.
 
 
 3
 The officer decided to follow the car, but before they could pull onto the highway two other vehicles intervened. After a couple of blocks, but still within the corporate limits of Freer, the officers were able to pass the two intervening vehicles. At that time, they noticed that the appellant's car bore Texas plates from another county. The officers accelerated their speed to close in on the automobile. At eighty miles per hour they fell further behind and concluded that the appellant had seen them and was fleeing. The officers accelerated to a speed in excess of one hundred miles per hour before they could overtake and stop the appellant's vehicle.
 
 
 4
 Both Hosch and Officer Garza got out of their respective vehicles and approached each other. They met near the rear door of Hosch's car, where Garza questioned him as to his nationality. Hosch acknowledged that he was an American citizen, and this apparently satisfied the officer. During the questioning, Garza, using his flashlight, surveyed the interior of the appellant's vehicle through a car window. On the back seat he saw several items, including a tire tool and a tool box. Officer Garza then asked Hosch to open the trunk. Hosch, responding that it was not his car, moved towards the front seat to get the keys. Officer Garza followed him and upon arriving at the driver's door of the car smelled the strong odor of marijuana. They returned to the rear of the vehicle, where Hosch fumbled with the keys. Again, he denied ownership of the car and insisted he did not have a key to the trunk. Officer Bustamonte was unable to open the trunk with the keys, so he removed the back seat of the vehicle and there discovered a large cache of marijuana, the subject of the contested search.
 
 
 5
 If the initial stop of appellant Hosch's vehicle was lawful, the consequent search was valid since the detection of the odor of marijuana clearly gave the officers probable cause for the intrusion. See United States v. Garza, 544 F.2d 222, 225 (5th Cir. 1976); United States v. Walker, 522 F.2d 194, 196 (5th Cir. 1975). We are satisfied that the officers lawfully placed themselves in position to detect the scent.
 
 
 6
 The tension between the need to stop and search vehicles in order to prevent illegal entry into our country and the protection of fourth amendment safeguards against unreasonable governmental intrusion into personal privacy has been largely resolved by the United States Supreme Court in a series of "border search" cases.[1] The propriety of a roving border patrol stop for questioning as to citizenship, as was accomplished here, was addressed in United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). There the Court set forth the applicable standard to be utilized in determining the legality of such stops:
 
 
 7
 Except at the border and its functional equivalents, officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country.
 
 
 8
 Id. at 884, 95 S.Ct. at 2582 (footnote omitted).
 
 
 9
 Officers Garza and Bustamonte observed, and articulated at the suppression hearing, several pertinent facts about the appellant and his vehicle prior to the stop that satisfy the Government's burden. The rear end of the appellant's car, when first observed, was riding extremely low, in spite of the fact that the driver was the only visible occupant.[2] The car bore out-of-county plates.[3] The officers could not keep up with appellant at eighty miles per hour and had to reach a speed of over one hundred to overtake his car. While it may be commonplace for vehicles to drive in excess of normal speed limits in sparsely populated areas, we think that the officers were entitled to draw the rational inference of flight from the actions of appellant's vehicle in this case. See United States v. Brignoni-Ponce, 422 U.S. at 885, 95 S.Ct. at 2582; United States v. Fontecha, 576 F.2d 601, 602 (5th Cir. 1978).
 
 
 10
 That appellant's car was riding very low with only one visible occupant, coupled with the justifiable inference of flight, satisfies the reasonable suspicion standard. The stop of appellant's automobile was therefore proper under the "totality of the circumstances" test.[4] See United States v. Brignoni-Ponce, 95 S.Ct. at 2582 n. 10. When, in the course of the citizenship inquiry, the tools and tool box, items the officer thought were normally kept in the trunk, were seen on the back seat, his suspicion was further aroused.[5] In the natural sequence of events that followed, the odor of marijuana was detected, which clearly created probable cause for the subsequent search. The motion to suppress was properly denied.
 
 
 11
 The judgment is AFFIRMED.
 
 
 
 [1]
 It is doubtful that Freer, Texas might presently be considered the functional equivalent of the border, see United States v. Calvillo, 537 F.2d 158, 161 (5th Cir. 1976), so that routine searches made there without probable cause would be legal. See Almeida-Sanchez v. United States, 413 U.S. 266, 272-73, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1976). It is unnecessary for us to reach that issue in this case, however
 
 
 [2]
 It is of course doubtful whether this factor, standing alone, could satisfy the reasonable suspicion test
 
 
 [3]
 This evidence would be insignificant in an area, like a national park, where a large number of transitory tourists might be anticipated. See, United States v. George, 567 F.2d 643, 645 (5th Cir. 1978). Since Freer is not such an area, however, the matter of automobile license plates is relevant, but only as a part of the totality of circumstances offered by the Government as justification for the stop
 
 
 [4]
 The case law of this circuit indicates, as one might expect, that the propriety of a given roving patrol stop must turn on the precise factual setting in which it is made. For example, a close analysis of the facts in United States v. Frisbie, 550 F.2d 335 (5th Cir. 1977), led this court to term the allegedly suspicious circumstances "dubious," and the evidence was suppressed. There the Boarder Patrol urged that the direction and time of travel (away from an unpatrolled border area at 6:30 a. m., when illegal alien traffic was common), difficulty of stopping, and sparse population justified the stop in question. Since the place of the stop was close to a national park then being frequented by thousands of visitors (far in excess of the local population), the factors relied on by the Government were discounted, and the stop was held not to be founded on reasonable suspicion. Moreover, the Frisbie court noted that allowing searches on such facts "would result in subjecting thousands of tourists visiting the area to unreasonable detention whenever they travel at hours when certain routes are less frequented." Id. at 338. See also United States v. George, 567 F.2d 643 (5th Cir. 1978) (stop in same area held unlawful). Stops made in the same general locale as the one made in Frisbie, however, have been upheld on different facts. United States v. Villarreal, 565 F.2d 932 (5th Cir. 1978); United States v. Almand, 565 F.2d 927 (5th Cir. 1978). On the other hand, stops in the area involved in the present case have been declared unlawful. United States v. Calvillo, 537 F.2d 158 (5th Cir. 1976)
 
 
 [5]
 Although it is questionable whether such an observation may properly arouse one's suspicion, see generally United States v. Brignoni-Ponce, 422 U.S. at 889-90, 95 S.Ct. at 2584 (Douglas, J., dissenting), the issue is not material to the disposition of the present appeal since the officers had probable cause to search the vehicle