**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gustavo Berru SAENZ,**
**Defendant-Appellant.**

No. 77–5627.

United States Court of Appeals,
Fifth Circuit.

Aug. 21, 1978.

Lucien B. Campbell, Federal Public Defender, San Antonio, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., LeRoy M. Jahn, John E. Murphy, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before GEE, FAY, and VANCE, Circuit Judges.

FAY, Circuit Judge:

Appellant, Gustavo Berru Saenz, was tried before the District Court for the Western District of Texas and convicted of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (1970). On appeal, Saenz argues that the roving United States Border Patrol stopped his automobile near Big Bend National Park without reasonable suspicion. Appellant further contends that the marijuana seized during a search immediately following the stop was improperly admitted into evidence because the search was not based on probable cause and was without consent. Based on this Court's decision in *United States v. Villarreal,* 565 F.2d 932 (5th Cir. 1978), we affirm the judgment of the district court.

## I. THE FACTS

On April 17, 1977, United States Border Patrol Officers Donnie R. Newberry and Leslie Whittington received a report at 6:15 a. m. from the radio operator at Marfa, Texas Control Center, that the Center had

received a sequential pattern of signals which indicated that two vehicles were traveling north toward Alpine, Texas, on Highway 118 in close proximity to each other.[1] Highway 118 runs north-south from Big Bend National Park, which is on the United States-Mexico border, and connects with Interstate 10 several hundred miles away. The 75 mile stretch of Highway 118 from Study Butte, Texas, which is 15 miles from the Mexican border, to Alpine, does not connect with any main roads. Most of the interconnecting roads are ranch roads which are locked at night.

Appellant's 1973 Pontiac Grand Prix and the first vehicle a red and white Ford, tripped the first set of sensors one mile north of Study Butte on Highway 118. The vehicles tripped the second set of sensors at a point approximately 40 miles south of Alpine. These were the only two vehicles tripping the sensors from the time of the initial signal at 4:41 a. m. until the time Officers Newberry and Whittington received the report from Marfa.[2] The vehicles in appellant's case had been traveling in tandem fashion for approximately 70 miles. Officer Newberry, who had been stationed in the Alpine area for about seven years, testified that he was aware that a frequent method of operation for smugglers was to travel in tandem with the lead car acting as a scout for its companion. The officer also testified that when he and Officer Whittington began to follow Saenz's car, the second vehicle, Saenz's driving appeared nervous and the car swerved as Saenz frequently glanced at the rearview mirror. Both vehicles bore out-of-county license plates, although the plates were from different counties. The testimony of Officer Newberry also indicated that Saenz's car was covered with dust and mud, leading the officers to believe that the vehicle was coming from an unpatrolled river

area near the border. According to Officer Newberry, there are no manned border crossings in the Big Bend National Park. Four or five unpatrolled border crossings exist in the park and are frequently used by alien and narcotic smugglers. When the river is low, it is possible to cross anywhere in the river area.

After Officer Newberry stopped Saenz's car, the officer again saw mud on appellant's vehicle that appeared to be particularly heavy underneath the fender wells of the car. When asked where he was coming from, appellant answered, "back there." Saenz identified himself as a resident alien but could not produce any identification. As Officer Newberry spoke with appellant, he observed mud on the floor board of the back seat. The officer testified that it appeared as though someone, or several people, had been in the vehicle. He asked Saenz to open the trunk and appellant did so without objection. When the trunk was opened, there was an odor of marijuana and two large bags containing the contraband were found.

## II. THE STOP

█ In order to stop a vehicle, border patrolmen must have reasonable suspicion that the vehicle is carrying illegal aliens. *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. De Witt,* 569 F.2d 1338 (5th Cir. 1978). Reasonable suspicion for a stop must be determined in light of the particular facts and circumstances of each case.

There have been several recent decisions by this Court involving facts similar to those in this case. In *United States v. Villarreal,* 565 F.2d 932 (5th Cir. 1978), sensors indicated that two vehicles were traveling north from the border in close proximity to each other for about an hour. The

---

1. On the morning of April 17, 1977, the officers were on roving patrol on Highway 118 just north of Alpine, Texas. In *United States v. Brignoni-Ponce,* 422 U.S. 873, 882, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), the Supreme Court held that reasonable suspicion could justify roving patrol stops by border patrol officers.

2. Two other vehicles tripped the sensors but at substantially earlier times than appellant's vehicle and the Ford.

officers observed a CB antenna on the lead vehicle and the occupants of the vehicle appeared to be of Mexican descent. As the vehicle approached the patrol car, the passenger ducked beneath the dash. From this information, this Court concluded that the officers had reasonable suspicion to stop the vehicle. The stop of the second vehicle was found to be proper because the officers knew that the two vehicles had been traveling together for about an hour, that the second vehicle had not reached their position, and that the first vehicle contained a CB radio which could have been used to warn the second vehicle of the officers' presence. When the officers located the second vehicle, the car was facing south and tracks on the highway indicated that it had made a u-turn. The driver's door was open, and as the officers drove toward the vehicle, an officer saw the driver bend over and place something under the car.

In *United States v. George*, 567 F.2d 643 (5th Cir. 1978), this Court held a stop illegal where the vehicles were traveling on Highway 118 on or near the Mexican border; the vehicles were on the road at 1:45 a. m., an unusual time for tourists or local ranchers to be on the road; George's automobile was larger than a compact and had out-of-state plates; George was the only visible occupant of his vehicle and tourists usually travel in pairs; the officers observed no camping gear in George's car and the officers did not recognize George's car. *Id.* at 644-645. This Court noted in its opinion in *George* that the only factor which provoked suspicion of George that was not present in *United States v. Frisbie*, 550 F.2d 335 (5th Cir. 1977),[3] was George's out-of-state license plate. This Court further stated:

> The weight we accord the suspiciousness of George's out-of-state plates is minute compared with the weight this Court accords a factor present in *Frisbie* but absent in this case. Frisbie was traveling in

an apparent convoy of three vehicles. . . . Whatever the suspiciousness of an apparent convoy, it gives more cause for suspicion than the sight of a vehicle with Georgia plates near a national park in Texas.

*United States v. George*, 567 F.2d at 645.

■ Some factors that would give rise to reasonable suspicion were set out by this Court in *United States v. Barnard*, 553 F.2d 389 (5th Cir. 1977). These factors include: characteristics of the area, including its proximity to the border; the unusual traffic patterns on the road; previous experience with alien smuggling and information about recent border crossings in the vicinity; the behavior of the driver, such as erratic driving; and the characteristics of the vehicle, including the appearance of being heavily loaded. *Id.* at 391. The sum of a number of the above factors may give rise to reasonable suspicion.

In appellant's case, Officer Newberry, who had been stationed in the same locality for seven years, testified that the sensor report indicated two vehicles were traveling in tandem fashion for approximately 70 miles. According to Officer Newberry's testimony, such a pattern was frequently used by smugglers. The vehicles were coming from an unpatrolled river area near the Mexican border and they were traveling at an hour in which local ranchers and tourists did not travel. The officer testified that it was his experience that most smuggling operations were conducted just before daybreak. The vehicles had out-of-county license plates and there was only one occupant in each car, which was uncommon in the case of tourists. Officer Newberry further testified that he was familiar with nearly all of the local ranchers in the area due to the length of time he had been stationed in that area. More importantly, the officer's testimony indicated that he noticed appellant's car was covered with

---

**3.** In *United States v. Frisbie*, 550 F.2d 335 (5th Cir. 1977), this Court held that the officers did not have reasonable suspicion to stop where the vehicles were traveling in an apparent convoy, during the early morning hours, in an area near the border and Frisbie's pickup truck was

riding low on its springs. The Court accorded no weight to allegations that the driver had difficulty stopping the car since this observation occurred after the officer signaled the vehicle to stop.

dust and mud, leading the officers to suspect that it was coming from the unpatrolled river area along the Mexican border. Officer Newberry also stated that he was not aware of any rain on that day which could have caused appellant's vehicle to collect dust and mud without having been in the river area. Furthermore, Officer Newberry observed nervous behavior on the part of appellant exhibited by frequent glances at the rearview mirror and a swerving driving pattern.

It is clear that several of the factors present in *Villarreal* are also present in this case. For example, in both cases the vehicles traveled in tandem fashion for about an hour, and in both cases the vehicles were traveling north from the border.[4] The patrolmen in *Villarreal* observed CB antennas in the vehicles leading them to suspect there was communication between the vehicles. Although no CB antennas were observed in appellant's case, there were other factors in this case that were not present in *Villarreal*. For instance, Saenz's vehicle was covered with dust and mud, Saenz's driving appeared nervous, Saenz was traveling at an unusual time of day and there was only one occupant in appellant's car which was common in smuggling operations.[5]

 The sum of all these factors convinces us that Officers Newberry and Whittington had reasonable suspicion to stop Saenz's vehicle.

## II. THE SEARCH

 Although reasonable suspicion is sufficient to justify a stop by roving border patrol officers, any further detention or search must be based on consent or probable cause. *United States v. Brignoni-Ponce,* 422 U.S. at 882, 95 S.Ct. at 2580. We believe Officer Newberry had probable cause to search the vehicle after the stop. Probable cause to search an automobile must be based upon belief, reasonably arising out of the circumstances known to the seizing officer, that the vehicle contains that which by law is subject to seizure and destruction. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Morris,* 565 F.2d 951 (5th Cir. 1978). In determining whether probable cause existed in *Morris,* this Court stated:

> We are accordingly reduced to a review of the facts and circumstances known to the officers (and any rational inferences taken therefrom) to determine if a reasonable man would have been led to believe a crime had been or was being committed . . .

> *Id.* at 952.

In appellant's case, Officer Newberry observed that apellant was nervous when he was stopped. The officer also observed mud on the back floor board as though someone or several people other than the driver had been in the vehicle. Furthermore, appellant said that he had lost his alien registration card, a common excuse given by aliens when apprehended. When Saenz was asked where he was coming from he could only reply "back there." All of these facts, coupled with what the officers already knew, gave the officers probable cause to search.[6]

---

4. It is not clear from the record whether the officers knew, before the car was stopped, that Saenz appeared to be Mexican. Although this factor was present in *Villarreal*, it is not necessary in appellant's case since there are enough factors to give rise to reasonable suspicion without that observation.

5. In this case we have all the factors present in *United States v. George*, 567 F.2d 643 (5th Cir. 1978): appellant's automobile was larger than a compact, it had an out-of-county license plate (although in *George* it was an out-of-state plate), there was only one occupant in the vehicle, there was no camping gear in the vehicle,

the time of day was unusual and the vehicle was coming from the border. If only these factors were present in this case, we would have to hold that the stop was illegal. However, we have three additional factors in this case. There was dust and mud on the vehicle, appellant's driving was nervous and the two vehicles were traveling in tandem fashion for approximately 70 miles.

6. Since probable cause existed for the search, we need not make a finding as to whether or not there was consent.

## IV. CONCLUSION

We hold that the stop of appellant's car was supported by reasonable suspicion and that there was probable cause for the subsequent search of the vehicle. The trial court was correct in denying the motion to suppress the evidence.

AFFIRMED.