**Juan Antonio SANCHEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–95–00398–CR.

Court of Appeals of Texas,
San Antonio.

May 22, 1996.

Rehearing Overruled July 8, 1996.

Discretionary Review Refused Oct. 16, 1996.

Joe Luis Luna, Crystal City, Alberto M. Ramon, Law Office of Alberto M. Ramon, Eagle Pass, for Appellant.

Melissa Daylong, Assistant District Attorney, Eagle Pass, for Appellee.

Before CHAPA, C.J., and HARDBERGER and GREEN, JJ.

## OPINION

CHAPA, Chief Justice.

Appellant Juan Antonio Sanchez was convicted of aggravated possession of marihuana. The jury sentenced appellant to twenty-eight years incarceration. Appellant complains that the trial court erred in failing to grant his motion for suppression of the contraband and that he did not receive effective assistance of counsel at trial. We reverse and remand.

■ Point of error one asserts that the trial court abused its discretion by finding that the arresting officers had reasonable suspicion under the law to stop appellant.

Specifically, appellant insists that the facts articulated by U.S. Border Patrol Agent Hector Diaz as his reason for stopping appellant's vehicle are insufficient to constitute a "reasonable suspicion".

The facts articulated by Agent Diaz to justify stopping appellant were that 1) appellant's car was heading out of a Texas border town in a direction where there were ranches, 2) appellant did not appear to be a rancher, 3) appellant's car appeared to be riding low, 4) appellant appeared nervous as he failed to look at the border patrol vehicle when it approached and passed him, 5) appellant was driving his vehicle slowly in light early morning traffic, and 6) appellant's vehicle was registered in Travis County. The issue is whether the trial court correctly found these facts to be sufficient to give rise to a "reasonable suspicion" as required by the law.

The Supreme Court, in *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), established a standard for Border Patrol searches:

> Except at the border and its functional equivalents, officers on roving patrol may stop vehicles only if they are aware of *specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in this country.*

*Id.* at 884, 95 S.Ct. at 2582 (emphasis added).

However, the court was quick to point out its constitutional concern:

> We are unwilling to let the Border Patrol dispense entirely with the requirement that officers must have a reasonable suspicion to justify roving-patrol stops. In the context of border area stops, the reasonableness requirement of the Fourth Amendment demands something more than a broad and unlimited discretion sought by the Government. *Roads near the border carry not only aliens seeking to enter the country illegally, but a large volume of legitimate traffic as well.* San Diego, with a metropolitan population of 1.4 million, is located on the border. Texas has two fairly large metropolitan areas

directly on the border; El Paso, with a metropolitan population of 360,000, and the Brownsville–McAllen area, with a combined population of 320,000. We are confident that substantially all of the traffic in these cities is lawful and that relatively few of their residents have any connection with the illegal entry and transportation of aliens. *To approve roving-patrol stops of all vehicles in the border area, without any suspicion that a particular vehicle is carrying illegal immigrants, would subject the residents of these other areas to potentially unlimited interference with their use of the highways, solely at the discretion of Border Patrol officers.*

*Id.* at 881–82, 95 S.Ct. at 2580–81 (emphasis added) (citations omitted).

In *United States v. Frisbie,* 550 F.2d 335 (5th Cir.1977), the court held that the following facts were not sufficient to create a reasonable inference of criminal activity to justify a border patrol stop: 1) a loaded vehicle with out of state license plates traveling from an unpatrolled river area, 2) the driver had difficulty stopping, 3) the area where the stop occurred was sparsely populated, 4) the agents had knowledge that local traffic did not normally travel the roads in question at such early hours of the morning, and 5) the route in question was frequently traveled by persons transporting illegal aliens and contraband. *Id.* at 337.

In *United States v. Melendez–Gonzalez,* 727 F.2d 407 (5th Cir.1984), the court found the following facts insufficient to justify a border patrol stop: 1) a vehicle traveling from the direction of the border, 2) on a highway known to the border patrol agents as a smuggling route, particularly in the early morning hours, 3) where the agents were alerted at 4:57 a.m. by sensors along the highway. *Id.* at 411. The court concluded that "[i]f a vehicle is already past towns in this country, the mere fact that it is proceeding on a public highway leading from the border is not sufficient cause to believe the vehicle came from the border." *Id.* at 410–12.

Regarding the fact that the vehicle was allegedly "riding low", the court stated, "[i]n any event, even if relevant, the fact that defendant's car was supposedly 'riding low' has not been given determinative weight in border patrol cases." *Id.* at 412 (see cases cited).

In *United States v. George,* 567 F.2d 643 (5th Cir.1978), the court found a border stop at 1:45 a.m. under similar circumstances improper, stating:

> [P]roximity to the border is not sufficient in itself to justify a roving stop. "If the mere presence of a vehicle upon a public highway leading away from the border constitutes a sufficient 'reason to believe' the vehicle in fact came from the border, untold number of innocent travelers are daily subject to inclusion in this dangerous category."

*Id.* at 645 (quoting *United States v. Escamilla,* 560 F.2d 1229, 1232 (5th Cir.1977)).

Concerning the remoteness of the area and the travel at early hours, the court stated, "[a] decision to travel such [isolated] roads at less busy hours should not be the difference constitutionally speaking determinative of the right of officers to stop vehicles." *Id.* at 645 (quoting *Frisbie,* 550 F.2d at 338).

In *Armstrong v. State,* 550 S.W.2d 25 (Tex. Crim.App.1977), the court of criminal appeals, elaborating on *Brignoni–Ponce,* examined the totality of the circumstances to determine if the stop of appellant's vehicle was reasonable:

> The totality of the circumstances surrounding the incident are looked to in determining whether the police conduct was reasonable. While a temporary investigative detention is allowed under certain circumstances, these circumstances must be such as to distinguish the activity of the detained person from that of any other citizen and must be based upon an objective perception of the events rather than the subjective feelings of the detaining officer. In order to justify the intrusion, the law enforcement officer must have specific, articulable facts, which in the light of his experience and general knowledge, together with other inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. Thus, even in the

absence of bad faith, detention based 'on a mere hunch' is illegal. There must be a reasonable suspicion by the law enforcement officer that some activity out of the ordinary is or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. *Where the events are as consistent with innocent activity as with criminal activity, a detention based upon those events is unlawful.*

*Id.* at 30–31 (emphasis added) (citations omitted).

In *Luera v. State,* 561 S.W.2d 497 (Tex. Crim.App.1978), a case with almost identical but stronger articulated facts than the present case, the court determined that the Border Patrol executed an illegal stop where: 1) appellant appeared to be Hispanic, 2) the area was known for alien-smuggling, 3) appellant attempted a high speed evasion, 4) appellant's vehicle had a suspicious suspension, 5) appellant's vehicle had out of county license plates, 6) appellant refused to look at the Border Patrol officer when driving past, and 7) appellant's vehicle had triggered a Border Patrol sensor on the highway. *Id.* at 499.

In *Saenz v. State,* 842 S.W.2d 286 (Tex. Crim.App.1992), a case with similar articulated facts to the present case, the court again determined that the Border Patrol agent executed an illegal stop where: 1) appellant's vehicle was stopped in the early morning hours on a highway with high incidence of smuggling in the area, 2) appellant's vehicle was stopped near the border, past Texas towns, 3) the particular road was normally only travelled by cattle trucks at that hour in the morning, 4) appellant's vehicle was suspected of having triggered highway sensors, 5) the Border Patrol officers's experience in "alien-narcotic trafficking" caused him to "believe that there was reasonable suspicion" to make the stop, and 6) appellant's vehicle was old, had New Mexico license plates, and was traveling from the border area in Texas. *Id.* at 289–92.

As in all the forgoing cases, the articulated facts in this case are insufficient to overcome the constitutional protections afforded every citizen of this country. The "proximity to the border is not sufficient in itself to justify a roving stop." *George,* 567 F.2d at 645.

■ The state urges that the fact that appellant's vehicle was traveling in the early morning hours toward a ranching area and that the appellant did not appear to be a rancher were sufficient to justify the stop. However, "[i]f a vehicle is already past towns in this country, the mere fact that it is proceeding on a public highway leading from the border is not sufficient cause to believe the vehicle came from the border." *Melendez–Gonzalez,* 727 F.2d at 411. Further, there is no evidence indicating that this Border Patrol officer or any Border Patrol officer possessed a special expertise in determining what, if anything, a rancher looks like. Moreover, every citizen of this country is free to travel any public road, whether he or she is or is not a rancher or does or does not look like a rancher.

■ The state also appears to give considerable weight to the Border Patrol's opinion that appellant's vehicle was "riding low". However, "even if relevant, the fact that defendant's car was supposedly 'riding low' has not been given determinative weight in border patrol cases." *Id.* at 412.

■ In support of its position, the state further relies on the fact that appellant appeared nervous because he failed to turn to look at the border patrol vehicle as it approached and passed him, and that appellant was driving slowly in light early morning traffic. It is much more reasonable to presume that an innocent citizen traveling at an early hour in an isolated ranch area, would travel slowly and carefully, keeping his attention on the road ahead to avoid the obvious dangers associated with the sudden appearance of deer, cows, or horses. Moreover, the Texas Court of Criminal Appeals did not find nearly identical facts convincing in *Luera.* See *Luera,* 561 S.W.2d at 499.

■ Finally, the state insists that having license plates from Travis County somehow creates such suspicion as to justify a border patrol stop. Certainly, there can be no justification to summarily cast such disparaging

suspicions on the citizens of any particular county simply because they reside in and are required to have license plates from that county. Again, the Texas Court of Criminal Appeals was unimpressed by this fact in *Luera. See id.* at 499.

This record does not reflect that the Border Patrol officer was able to determine in the dark and isolated area whether appellant was Hispanic before the stop was made. There is no evidence that the Border Patrol officer had ever met appellant, knew whether appellant had ever committed a crime, or saw any crime being committed. There is also no evidence that the officer had information from any source that appellant had even been across the border at any time in his life. In short, "the events [here] are [even more] consistent with innocent activity [than] with criminal activity, [and] a detention based upon those events [was] unlawful." *Armstrong,* 550 S.W.2d at 30–31; *see Saenz,* 842 S.W.2d at 288.

The net effect of the state's position is that because the Border Patrol officer's "hunch" regarding illegal aliens happened to hit pay dirt on this occasion as to marihuana, the end justifies the means. However, overexuberant Border Patrol officers, armed with such an unconstitutional license as suggested by the state, would subject countless innocent citizens to improper violations of their constitutional rights where such "hunches" failed to pay off. As the last bastion of justice, the courts must protect the constitutional rights of our citizens. In this respect, we should always be mindful of the language of *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886):

It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizens, and against any stealthy encroachment thereon.

*Id.* at 635, 6 S.Ct. at 535.

The trial court erred in failing to grant the motion to suppress. The point is sustained.

■ Although our holding suffices to reverse and remand, we will nevertheless address appellant's second contention. TEX. R.APP.P. 90. Appellant complains that his trial counsel rendered ineffective assistance for failing to request a jury instruction on the exclusionary provisions of article 38.23 of the Texas Code of Criminal Procedure.[1]

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), established the standard or review in ineffective assistance of counsel cases. In *Hernandez v. State,* 726 S.W.2d 53, 54–55 (Tex.Crim.App. 1986), the court of criminal appeals adopted the *Strickland* standard for Texas. Under the standard, counsel is presumed to have rendered adequate assistance, and the defendant must identify those acts or omissions which do not amount to reasonable professional judgment and are outside the "range of professional competent assistance." *Strickland,* 466 U.S. at 687–91, 104 S.Ct. at 2066. To show prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

In this case, it is clear that the only evidence to support the charges against appel-

---

1. The applicable language reads as follows:
No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has reasonable doubt, that the evidence was obtained in violation of the provisions of this article, then and in such event, the jury shall disregard any evidence so obtained.
TEX.CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.1996).

lant was obtained as a result of the tainted stop. "Since we find that the stop of defendant's vehicle was unlawful, the ensuing search necessarily falls as well." *Melendez–Gonzalez,* 727 F.2d at 412. Where the search is "in violation of the Fourth Amendment[,] [t]he [items] discovered as a result of that search [were] fruit of the poisonous tree and, as such, not admissible in evidence." *Frisbie,* 550 F.2d at 340.

Under TEX.CODE.CRIM.PROC.ANN. art. 38.23(a), appellant was entitled to an instruction to the jury that if they believed, or had a reasonable doubt, that the evidence was obtained in violation of the constitution or laws of Texas or the United States, they would disregard any evidence so obtained. However, appellant's counsel failed to request such an instruction, and thus to argue the issue. Since we must presume the jury would have followed the instructions of the trial court properly, it appears very probable under the fact of this case that the jury would have found, as we do today, that the stop was improper and in violation of both the federal and state constitutions. As such, the result of the proceeding would have, in all reasonable probability, been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Consequently, appellant received ineffective assistance of counsel, and the point is sustained. *See Jackson v. State,* 921 S.W.2d 809, 814 (Tex.App.—Houston [14th Dist.] 1996, n.w.h.).

The judgment is reversed, and the case is remanded.