**Martin Samuel RENTERIA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–98–00129–CR.

Court of Appeals of Texas,
San Antonio.

Jan. 27, 1999.

Rehearing Overruled March 10, 1999.

Gonzalo P. Rios, San Angelo, for Appellant.

Ori Tucker White, District Attorney, Shannon B. Flanigan, Assistant District Attorney, Fort Stockton, for Appellee.

Before ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice and PAUL W. GREEN, Justice.

## OPINION

LOPEZ, Justice.

This is an appeal from a trial court's admission of evidence, specifically three pounds of marijuana. After an evidentiary hearing, the trial court denied Martin Renteria's motion to suppress. Renteria was tried and found guilty. He was sentenced to two years confinement and fined $500.00. Appellant's confinement was suspended, and he was placed on four years probation. In his only issue, Renteria contends the trial court erred in admitting the marijuana obtained during a warrantless search. We disagree, and affirm the judgment of the trial court.

### Statement of Facts

On March 23, 1997, at approximately 9:00 p.m., Border Agents Carl Hofacker and John Finney observed appellant traveling northbound on Highway 277, three miles south of Sonora, Texas. Renteria was traveling with a companion in a 1985 red Chevrolet automobile.

As the car approached the border agents's Suburban, Agent Hofacker illuminated his lights. Appellant did not turn his head to view the lights as he passed by. Both agents observed the car traveling at a slow rate of speed, which they estimated at 40 miles per hour.[1] The agents did not see the passenger, who appeared to be slumped down in his seat.

Agent Hofacker proceeded to follow the car. Both agents noted the car increased its

---

1. The posted speed limit was 70 miles per hour. Both agents testified that the speed at which the car was traveling was an approximation as neither possessed a radar gun.

speed once it was being followed. In their pursuit of Renteria's car, the agents noted furtive actions by the passenger while facing the backseat. Agent Hofacker ran the license number and determined the car was registered in Dallas.[2]

Based on these observations and information, Agent Hofacker activated his flashing lights and pulled the vehicle over. In questioning the driver, Renteria, Agent Hofacker was informed Renteria was traveling to Sonora to drop off his passenger. Neither Renteria nor his passenger knew where in Sonora they were going. Agent Hofacker testified that Renteria made no eye contact and appeared nervous. Agent Hofacker asked both men for identification. Renteria produced a resident alien card, and his passenger produced a border crossing card. According to Agent Finney's testimony both individuals were in the country legally.

After approximately five minutes of questioning, both Agent Hofacker and Agent Finney asked for permission to search the vehicle. Consent to search was obtained from Renteria by both agents. Agent Hofacker first checked the trunk. Finding nothing in the trunk, he proceeded to check the passenger side of the car. Hofacker immediately noticed the smell of marijuana when he opened the passenger side door. At that point, he proceeded to check the floorboards of the vehicle. Unable to find anything, Agent Hofacker focused his search on the backseat of the automobile. Upon removing the cushion, Agent Hofacker found a wrapped brick of marijuana. Renteria and the passenger were placed under arrest.

### Standard of Review

■■■ The determination of whether facts exist to give rise to a reasonable suspicion is a mixed question of law and fact. *Loesch v. State*, 958 S.W.2d 830, 832 (Tex.Crim.App. 1997). On review, we conduct a deferential review of historical facts, but review, de novo,

a determination of mixed law and fact. *Id.; Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). We review all facts under the totality of the circumstances, working together and not in isolation of each other. *Id.*

### Reasonable Suspicion

■■■ In *Woods v. State*, the Court of Criminal Appeals abandoned the traditional "consistent with innocent activity as with criminal activity" test for determining reasonable suspicion. 956 S.W.2d 33, 38 (Tex. Crim.App.1997). Under the new test, when viewing all factors under a totality of the circumstances, a detention will be justified where "the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity." *Id.; See United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).[3] In articulating this test, the court expressly overruled those cases employing the former test. In particular, the Texas Court of Criminal Appeals overruled this court's decision in *Sanchez v. State*, 931 S.W.2d 331 (Tex.App.—San Antonio 1996, pet. ref'd), because it employed the "consistent with innocent activity" construct. *Woods*, 956 S.W.2d at 38.

In *Luera v. State*, the Texas Court of Criminal Appeals adopted eight factors to consider in determining reasonable suspicion regarding a roving border patrol stop: (1) the proximity to the border; (2) the usual patterns of traffic on the particular road; (3) the officer's previous experience in detecting illegal entry and smuggling; (4) the information concerning recent unlawful border crossings; (5) the driver's behavior, such as erratic driving or obvious attempts to evade the officer; (6) the physical aspects of the vehicle and the vehicle's load; and (7) the extraordi-

---

**2.** A later check of the license revealed that the car was actually registered out of Del Rio. Agent Hofacker testified that he mistakenly entered the license number the first time.

**3.** Specifically, "a roving patrol may stop vehicles only if they are aware of specific articulable

facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in this country." *Brignoni–Ponce*, 422 U.S. at 884, 95 S.Ct. 2574.

nary number of passengers, their behavior, or persons trying to hide. 561 S.W.2d 497, 499 (Tex.Crim.App.1978); *United States v. Brignoni–Ponce,* 422 U.S. 873, 885–86, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The court opined this list was not exhaustive of the factors which an officer could consider when establishing reasonable suspicion. *Id.* Rather, all factors should be considered on a case-by-case basis. *Id.*

### Characteristics of Area and Proximity to Border

■ Renteria was stopped traveling 90 miles within the U.S. border. He asserts on appeal the stop was not made at the functional equivalent of the border. The State contends that proximity to the border is subjective to the characteristics of the area. Given that the area was a common smuggling route, the stop was conducted as if at the border. Under federal case law, vehicles traveling more than fifty miles from the border have been considered a substantial distance from the border. *See United States v. Cardona,* 955 F.2d 976, 980 (5th Cir.1992), cert denied, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 291 (1992) (stating a stop where vehicle was between 40 and 50 miles from Mexican border was proper); *United States v. Melendez–Gonzalez,* 727 F.2d 407, 411 (5th Cir.1984) (stating a stop sixty miles from border was not sufficient to establish the vehicle came from border).

■ We recognize that proximity to the border is important because it addresses the probability of whether the vehicle just crossed the border. This is done by analyzing the road on which the vehicle was traveling at the time of the stop. Factors to consider are the number of towns along the road and the number of intersecting roads. *Cardona,* 955 F.2d at 980.

In the present case, Agent Hofacker testified that based on his experience, Highway 277 is a frequently traveled road for alien smugglers, because smugglers are able to disperse to various parts of the state at Sonora. However, on cross-examination Hofacker testified that other roads, not originating from the border, intersected Highway 277. He conceded that Renteria could have been coming from any town located between Sonora and Del Rio, and not necessarily the border.

■ The only fact which the officers could articulate regarding the border was that the Del Rio border check point had been closed since 6:00 p.m. that evening. At best, this information would have led the officers to believe that there was a possibility of illegal border crossings. We find the idea that Renteria could have just crossed the border was mere speculation. The fact remains that the stop occurred on a road 90 miles north of the border, and north of certain Texas towns. Thus, we find close proximity to the border to be lacking in the present case. However, we note that proximity to the border would never, in and of itself, constitute or negate reasonable suspicion.

### Patterns of Traffic and Time

According to his experience as a border agent, Hofacker testified that alien smuggling generally occurs at night. In addition, it had been his experience that smuggling tends to be more common in the months of March, April and May. In the case at bar, Renteria was stopped at 9:00 p.m. in late March on a road favored by alien smugglers.

### Officer's Previous Experience

At the time of the stop, Agent Hofacker testified that he had worked as a Border Patrol agent for about nine and a half years. On average, Hofacker worked three to four smuggling cases per week. Agent Finney testified that he had worked for the Border Patrol for twelve years.

It had been the experience of both agents that Highway 277 is a common route taken by alien smugglers. Furthermore, it had been their experience that smugglers would not turn to look at officers when their lights were illuminated. Generally, smugglers would stare straight ahead and continue to drive. In addition, both agents testified that smugglers would travel at a slower rate of speed to avoid traffic violations.

In the present case, Renteria did not look at the officer's vehicle when he passed them.

In addition, appellant had been driving at a slow rate of speed, which the agents had estimated at 40 miles per hour. His speed increased only after the agents began to follow him.

### Behavior of Passenger

While following Renteria, both agents observed the behavior of the front seat passenger. It appeared that he was "moving around quite a bit," and "climbing into the backseat or [putting] something into the backseat." Agent Hofacker characterized the movement as not "really abnormal," but not normal. However, it did raise thoughts as to what the passenger was doing.

### Vehicle Registration

While pursing Renteria, Agent Hofacker ran a check on the license plate number. An initial check revealed the car was registered in Dallas under a different individual.[4] The fact that the vehicle was registered in Dallas contributed to the agents's decision to stop the vehicle. Based on his experience, many smugglers would travel through the area en route to larger cities such as Austin, San Antonio and Dallas.

█ Based on the facts articulated above, and in light of the *Woods* opinion, we find that a reasonable suspicion existed to justify the stop made by Agent Hofacker and Agent Finney. As evident from the facts above, wholly innocent activities, when considered together, can raise a degree of suspicion. *See Woods,* 956 S.W.2d at 38; *United States v. Sokolow,* 490 U.S. 1, 10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The officer's experience, the time of day and time of year, the vehicle's registration, the behavior of the passenger and the inferences which could be drawn from these facts, all contributed to establishing a reasonable suspicion that appellant was smuggling aliens.

Appellant would have this court be guided by *Saenz v. State,* 842 S.W.2d 286 (Tex.Crim.

App.1992). Given the similarity of this case to the facts in *Saenz,* appellant contends that this court would have no choice but to find that reasonable suspicion did not exist. Like Renteria, the appellant in *Saenz* was traveling with a passenger. Similarly, no traffic violations were observed by Border Patrol agents. An immigration check was performed, and the appellant provided a valid driver's license. A subsequent search of the trunk revealed marijuana. In considering the factors articulated by the border agents, the court determined that reasonable suspicion was not established.

We would agree with the State that the analysis employed by the Court of Criminal Appeals in *Saenz* is suspect. In *Saenz,* the court employed the "consistent with innocent activity" construct rejected in *Woods.* In analyzing the factors, the court determined that each individual factor mitigated against a finding of reasonable suspicion. After *Woods,* such an analysis is not considered a true rendition of a totality of the circumstances test. Therefore, we are not guided by *Saenz.*

█ In addition, Renteria would have this court consider those factors which did not exist, such as the following: (1) the vehicle was not heavily loaded nor uniquely equipped; (2) no traffic violations were observed; (3) no evasive action was taken by Renteria; and (4) no information was received by the agents that an illegal border crossing had recently occurred. These factors are persuasive. However, a reading of case law after *Woods* indicates that reviewing courts consider and weigh those factors which *existed* at the time the law enforcement officer sought to detain the defendant. *See Garcia v. State,* 967 S.W.2d 902, 906 (Tex.App.—Austin 1998, no pet.) (stating court should consider factors which existed at the time officer initiated investigative stop); *see also Telshow v. State,* 964 S.W.2d 303, 306–7 (Tex.App.—Houston [1st Dist.]

---

4. Agent Hofacker later determined that the initial check was off by one number. Appellant was driving a 1985 Chevrolet Celebrity. The initial check of the vehicle's registration revealed a 1984 Chevrolet automobile. Agent Hofacker testified he had no reason to believe he had run the wrong license number at the time. Based on Agent Hofacker's testimony, we consider the initial check of the vehicle to be an honest mistake. Moreover, there is no evidence in the record to indicate otherwise.

1998, no pet.) (considering factors which existed at time investigative stop was initiated). Simply, we consider those facts articulated by the law enforcement agent which existed at the time the stop was made.

Finally, Renteria argues reasonable suspicion could not be found even under the new totality of the circumstances test. In support of this argument, appellant focuses on the recent opinion of the Thirteenth Court of Appeals, *Loesch v. State*, 979 S.W.2d 47 (Tex. App.—Corpus Christi 1998, no pet.) (*Loesch III*). On remand from the Court of Criminal Appeals, *Loesch III* was decided under the *Woods* test. In *Loesch III*, border patrol agents stopped appellant's car traveling within a few miles of a fixed immigration check point. Appellant was arrested after a drug dog indicated it smelled contraband in the bumper of the car. The court of appeals held reasonable suspicion did not exist because only a few of the *Brignoni–Ponce* factors could be adduced.

We do not find *Loesch III* applicable to the present case for three reasons. First, the court rested its analysis on *Saenz* and *Sanchez. Id.* at 51–2. As noted above, *Sanchez* was overruled by *Woods.* Furthermore, in light of the *Woods* case, we do not find *Saenz* persuasive. Second, the court focused on those factors which did not exist at the time border agents initiated the stop of the appellant. *Id.* at 52. For example, the court noted the lack of traffic violations and the lack of the suspicious activity within the area. As noted above, the focus of our determination should be on the factors which did exist at the time law enforcement agents made the stop. Finally, in *Loesch III,* the court found that the border agents failed to articulate the basis on which they held their belief, such as personal experience or training. *Id.* at 51. In the case at bar, Agent Hofacker and Agent Finney both testified that based on their experience, Highway 277 is a common smuggling route. Furthermore, based on their experience, smugglers prefer to travel at night and during the months of March, April and May. It was their experience that smugglers would tend to drive at slow rates of speed below the speed limit. Finally, it was their experience that smugglers would not turn to view lights when patrol car lights were illuminated. All these factors, and more, were present when Agent Hofacker initiated the stop of appellant's automobile.[5]

## Continued Detention

Appellant also contends that even if the original detention was justified, Agent Hofacker's continued detention was not justified. The State asserts the detention was no longer than necessary and was reasonably related to the officer's need to determine if Renteria was smuggling aliens. *See Davis v. State,* 947 S.W.2d 240 (Tex.Crim.App.1997).

In analyzing the scope of a detention stop, the Court of Criminal Appeals has held that a detention that is not temporary and reasonably related in scope to the circumstances which justified the detention is unreasonable and violates the Fourth Amendment of the U.S. Constitution. *Davis,* 947 S.W.2d at 243; *see also Ussery v. State,* 651 S.W.2d 767, 770 (Tex.Crim.App.1983) (stating that a detention for investigatory purposes must be limited). The propriety of a stop's duration is determined by assessing whether the police diligently pursued a means of investigation likely to dispel or confirm their suspicion. *Davis,* 947 S.W.2d at 240 (quoting *Perez v. State,* 818 S.W.2d 512, 517 (Tex. App.—Houston [14th Dist.] 1991, no pet.)). We agree with the State.

In the present case, Agent Hofacker questioned Renteria as to his citizenship and destination. Renteria produced a valid permanent resident alien card, and his passenger produced a valid border crossing card. Renteria responded that he was going to Sonora to drop off his passenger. Upon continued questioning, he revealed that he had been given a phone number to call once

---

5. The impact of the *Woods* test is profound. The innocent activity test has been disposed of in favor of a more lenient test. Understandably, it was more difficult to determine reasonable suspicion when factors were assessed for their individual impact. However, if taken too far, the *Woods* analysis may swing the pendulum the other way, and find reasonable suspicion where only a mere hunch in fact existed. In this amorphous area, courts must tread carefully in making their determination.

they had reached Sonora. The prefix to the number given by Renteria was 774. According to Agent Hofacker, this prefix number did not correspond to the Sonora telephone number prefix of 387. Additionally, according to Agent Hofacker, Renteria did not make eye contact with him. On continued questioning, Renteria informed Agent Hofacker that he had borrowed the vehicle. Based on the incorrect prefix number, Renteria's lack of eye contact and his statement that the car was borrowed, Agent Hofacker asked to search the car. Agent Hofacker testified that the purpose of the search was to search for aliens. He further testified that only upon opening the passenger door was he able to determine how many persons were in the car. Officer Hofacker indicated his practice was never to lean into a car as agents had been dragged and injured by doing so.

Appellant centers on the fact that he and his passenger were able to produce valid legal identification, and that they freely responded to Agent Hofacker's questions as to their destination. Renteria contends the detention should have ceased when Agent Hofacker determined that he and his companion were not illegal aliens. According to Agent Hofacker's testimony, however, his suspicion continued based on the nervousness of Renteria and their inability to state where in Sonora they were going. Although, Agent Hofacker testified that initially he saw only two occupants in the car, there was nothing to indicate that Renteria and his passenger were the only two occupants. We find these facts constituted specific articulable facts from which Agent Hofacker's suspicion continued. A search of the car was necessary to dispel or confirm his suspicion that illegal aliens may have been in the car. Furthermore, Agent Hofacker limited his search to those areas of the vehicle where a person could be hidden, the trunk and the backseat. We find the scope of the detention was not exceeded by Agent Hofacker.

## Conclusion

We find the specific facts articulated by Agent Hofacker and Agent Finney, and the inferences which could be drawn from those facts, created a reasonable suspicion to justify the stop of Renteria's vehicle. We also find that the search did not exceed its purpose. For these reasons, we overrule appellant's issue and affirm the judgment of the trial court.