# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-51299
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

December 31, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SAMMY SALAZAR, also known as Samuel Salazar, also known as Sammuel Salazar,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:13-CR-1359

Before BARKSDALE, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Sammy Salazar was convicted by a jury of conspiracy to transport illegal aliens and conspiracy to harbor them, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I), (a)(1)(B)(i) & (a)(1)(B)(ii). In challenging the district court's denying, after a hearing, his motion to suppress evidence obtained in the traffic stop that led to his arrest, Salazar asserts Border Patrol

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 14-51299

Agents lacked reasonable suspicion, based on the factors set forth in *United States v. Brignoni-Ponce*, 422 U.S. 873, 884–86 (1975), to stop the Lexus automobile in which he was a passenger.

For considering a challenge to the denial of a motion to suppress, factual findings are reviewed for clear error; legal conclusions, *de novo*. *United States v. Rangel-Portillo*, 586 F.3d 376, 379 (5th Cir. 2009). The constitutionality of the stop, including whether there was reasonable suspicion, is also reviewed *de novo*. *United States v. Neufeld-Neufeld*, 338 F.3d 374, 378 (5th Cir. 2003). Moreover, suppression-hearing testimony is viewed in the light most favorable to the prevailing party. *See United States v. Garcia*, 604 F.3d 186, 189–90 (5th Cir. 2010).

Reasonable suspicion requires law enforcement on roving patrol to be "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicle[] contain[s] aliens who may be illegally in the country". *Brignoni-Ponce*, 422 U.S. at 884. To determine whether reasonable suspicion existed, we examine the totality of the circumstances, weighing the factors set forth in *Brignoni-Ponce*. *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001). Those factors include: (1) proximity to the border; (2) characteristics of the area in which the Agents encounter the vehicle; (3) usual patterns of traffic in that area; (4) Agents' previous experience with illegal activity; (5) any information about recent border crossings and trafficking in the area; (6) appearance and characteristics of the vehicle stopped; (7) behavior of the driver; and (8) the number, appearance, and behavior of the vehicle's passengers. *Brignoni-Ponce*, 422 U.S. at 884–85. Viewing the facts in the light of the *Brignoni-Ponce* factors, and for the following reasons, reasonable suspicion existed.

No. 14-51299

"The first factor, [the vehicle's] proximity to the border, is a paramount factor in determining reasonable suspicion." *United States v. Zapata-Ibarra*, 212 F.3d 877, 881 (5th Cir. 2000) (internal quotation marks omitted). The tactical checkpoint through which Salazar's vehicle passed was approximately 20 miles from the border, and the vehicle was stopped approximately six miles beyond the checkpoint. Stopping the vehicle as it moved away from the border, within 50 miles of it, creates a "stand-alone inference that the vehicle's journey originated at the border". *United States v. Soto*, 649 F.3d 406, 409 (5th Cir. 2011).

Additionally, the Border Patrol Agents were aware that Highway 131 was a known smuggling route that circumvented permanent immigration checkpoints. Although that alone is insufficient to justify a stop, *see United States v. Diaz*, 977 F.2d 163, 165 (5th Cir. 1992), the "road's reputation as a smuggling route *adds* to the reasonableness of the agents' suspicion". *Jacquinot*, 258 F.3d at 429 (emphasis in original). Moreover, the Agents knew Highway 131 is not a common route from Eagle Pass, Texas, where the vehicle's journey purportedly began, to its supposed destination, Uvalde, Texas. According to the Agents, that route takes twice as long as other routes to travel from Eagle Pass to Uvalde.

Furthermore, the two Agents had a combined 15 years of experience as Border Patrol Agents, ten of which were in the area where the stop occurred. Both were familiar with the area's traffic, routes to travel from town to town, and checkpoint locations, which contributed to their reasonable suspicion the vehicle was involved in illegal activity. *See United States v. Cervantes*, 797 F.3d 326, 328–29, 336 (5th Cir. 2015).

Moreover, immediately after Salazar's vehicle left the checkpoint, the Agents seized a truck carrying illegal aliens in its bed, and it was traveling to

No. 14-51299

Uvalde on the same indirect route. "Although a convoy of two . . . cars travelling together does not itself justify [a] stop, it may understandably raise the officer[s'] suspicions". *United States v. George*, 567 F.2d 643, 645 (5th Cir. 1978) (internal quotation marks omitted).

The Agents' reasonable suspicion was supported by other factors as well, such as: the vehicle's low rate of speed past the checkpoint; the "rare" presence of a Lexus on a ranch road typically traversed by work vehicles, *see, e.g., United States v. Nichols*, 142 F.3d 857, 871 (5th Cir. 1998); the appearance of the occupants of the vehicle; and the Lexus' being registered to an individual from outside of San Antonio, Texas (not near Eagle Pass or Uvalde), *see United States v. Delgado*, 99 F. App'x 493, 496 (5th Cir. 2004). "Not every *Brignoni-Ponce* factor need weigh in favor of reasonable suspicion for it to be present, nor does the Fourth Amendment require the law enforcement officer eliminate all reasonable possibility of innocent travel before conducting an investigatory stop." *Zapata-Ibarra*, 212 F.3d at 884.

As stated, based on the totality of the circumstances and the weight of the *Brignoni-Ponce* factors, the court did not err in determining there was reasonable suspicion to stop the vehicle in which Salazar was a passenger. *See Cervantes*, 797 F.3d at 328–29; *Jacquinot*, 258 F.3d at 427–28.

AFFIRMED.