**Tyrone Keith LEDAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–95–361 CR.**

Court of Appeals of Texas, Beaumont.

Submitted June 1, 1999.

Decided Aug. 25, 1999.

Donald W. Rogers, Jr., Richard Haynes & Associates, P.C., Houston, for appellant.

Michael A. McDougal, Dist. Atty., Gail Kikawa McConnell, Asst. Dist. Atty., Conroe, for state.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION ON REMAND

DON BURGESS, Justice.

Appellant was convicted of Aggravated Possession of a Controlled Substance. On

direct appeal, we affirmed the conviction. *See Leday v. State*, No. 09–95–361 CR, 1997 WL 354770 (Tex.App.—Beaumont, June 25, 1997)(not designated for publication). Appellant petitioned for review. In reversing our judgment affirming the conviction, the Court of Criminal Appeals abrogated approximately thirty years of precedent in ultimately holding that a defendant who testifies at the punishment stage of a trial and admits his guilt does not waive appellate review of any error alleged to have occurred during the guilt/innocence stage of the trial. *See Leday v. State*, 983 S.W.2d 713, 721–26 (Tex. Crim.App.1998). This former rule had become known as "the *DeGarmo* doctrine" "[b]ecause of the infamy of the case." *Id.* at 723, n. 14. The Court of Criminal Appeals remanded the case to us for substantive consideration of appellant's complaints regarding the admissibility of the contraband used to prosecute him.

 The two issues appellant presents to us on remand contend the trial court erred in overruling Leday's motion to suppress because (1) the cocaine seized from Leday and his companion, Ms. Lynch, was "the product of an unreasonable warrantless detention without reasonable suspicion in violation of the Fourth and Fourteenth Amendments," and (2) the cocaine seized from Leday was "the product of an unreasonable warrantless arrest and search of Leday without probable cause in violation of the Fourth and Fourteenth Amendments." The basis for suppressing the contraband as set out in Leday's written motion to suppress provides, "The search and seizure were made without probable cause and without warrant. That the arrest was illegal and without warrant." The deference an appellate court should afford a trial court in reviewing a search and seizure ruling is often "determined by which judicial actor is in a better position to decide the issue." *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim. App.1997). If the issue involves the credi-

bility of a witness, thereby making the evaluation of that witness's demeanor important, "compelling reasons exist for allowing the trial court to apply the law to the facts." *Id.* Appellate courts should afford almost total deference to a trial court's determination of historical facts that the record supports, especially when based on the trial court's evaluation of credibility and demeanor. *See id.* at 89. An appellate court "should afford the same amount of deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Id.* However, "appellate courts may review *de novo* 'mixed questions of law and fact' not falling within this category." *Id.* In the instant case, the admissibility of the contraband involved mixed questions of law and fact that did turn, to some extent, on the credibility of Officer Lawson. We therefore afford the trial court great deference in its ultimate determination to admit the items of contraband in question.

The Court of Criminal Appeals set out the facts surrounding the discovery of the contraband as follows:

> The appellant was the passenger in a vehicle which a deputy constable stopped for speeding. The officer's dog, which was trained to detect narcotics, began barking in the officer's car. The driver asked if the dog would bite someone who had cocaine on their person. The officer said no. The driver asked the officer to take a bag out of her coat pocket in such a way that the appellant could see that she was not giving it willfully. The bag contained about 124 grams of "crack" cocaine. The driver and the appellant were arrested and taken to the constable's office. After talking to the driver, the officer searched the appellant's shoes and found about 28 more grams of "crack" cocaine.

*Leday v. State*, 983 S.W.2d at 714.

Appellant does not contend that the initial traffic stop was improper. We will supply

any further details as needed as we discuss the issues presented.

The scope of a permissible temporary detention was succinctly set out in *Davis v. State,* 947 S.W.2d 240, 242–45 (Tex.Crim. App.1997). In *Davis,* the Court reiterated the well-recognized rule that an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, and the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Id.* at 244–45. In the instant case, the only evidence before the trial court when it ruled on Leday's suppression motion was the testimony of the arresting officer, Craig Lawson. Lawson's testimony indicates that he observed the vehicle in which Leday was a passenger speeding at about 1:40 a.m. on November 24, 1993. He stopped the vehicle at that time. The vehicle displayed Georgia licence plates. During his conversation with the driver, Ms. Lynch, Lawson noticed that she was "overly nervous" and at one point blurted out something to the effect of, "Don't take us to jail; we're not criminals." After getting driver's licence and insurance information from Ms. Lynch, Lawson then spoke to Leday. Lawson noted that Leday's responses to questions about the couple's itinerary did not match the responses from Lynch. Lawson then requested, and was granted, written consent to search the vehicle from Lynch. The time of the consent was listed at "1:50" a.m. The elapsed time between the time of the traffic stop and the time Ms. Lynch agreed to the search of her vehicle was only ten minutes.

 As noted in *Davis,* in a traffic stop situation, an officer may demand identification, a valid driver's license, and proof of insurance from the driver. *Davis,* 947 S.W.2d at 245, n. 6. From the record be-fore us, as Lawson was in the course of conducting these routine matters incident to the traffic stop, his suspicions were raised by Lynch's excessive nervousness, her request to Lawson not to take she and Leday to jail, and the inconsistent responses. The continued detention of Lynch and Leday was certainly reasonable up to the point of Lawson's request for consent to search the vehicle, as well as reasonable up to the point when Lynch asked Lawson to retrieve the contraband from her coat.[1] Therefore, for Fourth Amendment purposes, the continued detention of Lynch and Leday was reasonable up to the point that Lynch voluntarily and unexpectedly asked Lawson to retrieve the contraband from her person. Issue one is overruled.

 As we appreciate Leday's argument under his second issue, the sole determination is whether probable cause existed for Leday's arrest following Lynch's relinquishment of the cocaine on her person to Lawson. State law, and not federal law, governs the legality of a state arrest so long as state law does not violate federal constitutional protections against unreasonable searches and seizures. *See Amores v. State,* 816 S.W.2d 407, 413 (Tex. Crim.App.1991). "Texas law requires a warrant for any arrest unless one of the statutory exceptions is met." *Anderson v. State,* 932 S.W.2d 502, 506 (Tex.Crim.App. 1996), *cert. denied,* 521 U.S. 1122, 117 S.Ct. 2517, 138 L.Ed.2d 1019 (1997). These statutory provisions require the legal equivalent of probable cause. *Amores,* 816 S.W.2d at 413. To effectuate a full custodial arrest, an officer must have probable cause to believe the person arrested has committed or is committing an offense. *Id.* at 411; *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause to arrest exists where the facts and circumstances within the arresting officer's knowledge and of which he has rea-

---

1. For purposes of reviewing the reasonableness of the detention, we need not actually factor in Lynch's voluntary relinquishment of the contraband on her person to Lawson. At that point, the circumstances had ripened to full-blown probable cause to arrest Lynch and, as will be addressed in issue two, Leday.

sonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe an offense has been or is being committed. *See Amores*, 816 S.W.2d at 413. The determination of probable cause hinges on " 'the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act.' " *Woodward v. State*, 668 S.W.2d 337, 345 (Tex.Crim.App.1982) (opinion on reh'g)(quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Probable cause requires more than mere suspicion but far less evidence than that needed to support a conviction or to support a finding by a preponderance of the evidence. *See id.* The rule of probable cause seeks to accommodate the sometimes opposing interests of (1) safeguarding citizens from rash and unreasonable police conduct and (2) giving fair leeway to legitimate law enforcement efforts. *Id.* at 345–46.

The State replies to issue number two: "Deputy Constable Lawson had probable cause to arrest Appellant as a result of finding a large amount of crack cocaine in the possession of Charmaine Lynch." They go on to argue that sufficiency of the evidence analysis or affirmative links analysis is "clearly inappropriate" to the legal analysis of probable cause and cite a passage from *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App.1997). They then state:

At the time he made the decision to place Appellant under arrest, the following facts and circumstances were known to Deputy Lawson:

(1) Deputies Lawson and Self lawfully stopped the car in which Appellant was a passenger for speeding 61 miles per hour in a 55 mile per hour zone.

(2) The traffic stop was made at approximately 1:40 a.m.

(3) The driver, Ms. Lynch, and Appellant were the only occupants of the car.

(4) As Ms. Lynch was getting her driver's license, she said to Deputy Lawson something to the effect of "[d]on't take us to jail or something like that. We're not criminals, something pertaining to that."

(5) Deputy Lawson testified that he had made "too many" traffic stops in his career as a law enforcement officer. And, relative to other persons that he had stopped for speeding, Ms. Lynch was "overly nervous."

(6) Deputy Lawson observed that the passenger, Appellant, "kept his eyes glued on us."

(7) Appellant and Ms. Lynch gave Deputy Lawson different versions of where they had been and where they were going.

(8) Ms. Lynch was very nervous after Deputy Lawson explained in response to her questions that he had a drug dog to detect narcotics on Highway 59.

(9) Deputy Lawson related that after ·Ms. Lynch signed a consent to search form, she asked Deputy Lawson, "Would you take the substance out of the inside of my coat without me having to do it, to give it to you so Mr. Leday would not see her voluntarily.... She was concerned about taking the narcotics out of her coat to give to me. [She said,] 'I'm scared for Tyrone to see me give this to you. Would you take this out of my pocket."

(10) Deputy Lawson took a cookie of crack cocaine out of the inside pocket of Ms. Lynch's coat, a "form [in] which people haul [cocaine] in large amounts."

The totality of the circumstances adduced at the motion to suppress hearing in this case show that Deputy Lawson had probable cause to believe that Appellant and Ms. Lynch were involved in hauling large amounts of cocaine.

Before arresting Appellant, the officers knew that Ms. Lynch's story of where she had been and where she was going did not match Appellant's story, the officers had found a large amount of cocaine, Ms. Lynch's demeanor was very

nervous, Appellant was very interested in the proceedings with her, and Ms. Lynch was very concerned that Appellant should think that the officers had found the cocaine on her. Further, the amount of cocaine found on Ms. Lynch itself is significant, and it is understandable that Appellant's argument assiduously avoids discussion of this factor. Appellant's argument might be more compelling if only a couple of rocks, explainable for personal use, had been found. Given the large amount actually retrieved from Ms. Lynch, however, and the other factors noted here, the circumstances reasonably suggested that Ms. Lynch and Appellant were jointly involved in the crack trafficking enterprise. The officers in this case had sufficient information to reasonably believe that Appellant was committing or had committed an offense, and accordingly, the subsequent search of Appellant and the seizure of the crack cocaine was lawful.

■ Considering the ten "facts and circumstances ... known to Deputy Lawson," facts one through five do not even mention any actions of Leday, much less indicate Leday was committing any offense. Fact six indicates that Leday "kept his eyes glued on us." However, Deputy Lawson did not articulate the significance of that fact nor state that this was unusual or that he drew any inference from this conduct. Merely looking at a police car has been held insufficient to constitute a basis for reasonable suspicion for a detention. *See Rodriguez v. State*, 578 S.W.2d 419, 420 (Tex.Crim.App.1979); *see also Jones v. State*, 567 S.W.2d 209, 211 (Tex. Crim.App. [Panel Op.] 1978)(looking at a police car not out of the ordinary or connected with crime); *Luera v. State*, 561 S.W.2d 497, 499 (Tex.Crim.App. [Panel Op.] 1978)(looking straight ahead and not looking at officers insufficient for a finding of reasonable suspicion); *but see Renteria v. State*, 989 S.W.2d 114 (Tex.App.—San Antonio 1999, no pet.)(agents' testimony that it had been their experience that smugglers would stare straight ahead and not look at officers when their lights were illuminated held sufficient among other factors for determination of reasonable suspicion). Consequently fact six is no factor which provides probable cause.

■ Facts eight and ten only involve Lynch, not Leday. In fact, Lynch's nervousness is not necessarily a factor. *See Munera v. State*, 965 S.W.2d 523, 532 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd). The state places a great deal of reliance on the fact that the amount of cocaine found on Lynch implicates Leday. This reliance on quantity is misplaced. A person's mere proximity or propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause. *See Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).

■ Fact nine, the concern of Lynch about her relinquishing the drugs to Lawson and her concern about Leday's interest and attitude about this transaction, while argued as a factor by the State, is indeed, no factor. Lynch's state of mind cannot provide probable cause to arrest Leday for possession of the cocaine found on Lynch.

■ Fact seven, the inconsistent stories of Lynch and Leday, is a factor which could be used to articulate a reasonable suspicion and justify the temporary detention of both. *See Fields v. State*, 932 S.W.2d 97, 105 (Tex.App.—Tyler 1996, pet. ref'd). Even assuming it can be a factor, under the totality of the circumstances, that can be used in determining probable cause, it is only a factor and cannot by itself produce probable cause that Leday possessed cocaine. "The perceived events must be out of the ordinary, suspicious and tie a suspect with a criminal act." *Stull v. State*, 772 S.W.2d 449, 451 (Tex.Crim.App. 1989).

Therefore, under the appropriate standard of review, we hold the deputy did not

have probable cause to arrest Leday.[2] Therefore, the trial court erred in failing to suppress the evidence found as a result of the constitutionally infirm arrest. Suffice to say this is an error that affects the substantial rights of Leday. The judgment is reversed.

REVERSED AND REMANDED.

RONALD L. WALKER, Chief Justice, dissenting.

I must respectfully dissent to the majority's reversal of appellant's conviction based on a finding of the lack of probable cause to arrest him. In analyzing appellant's second point of error, the majority makes the same mistake the Court of Criminal Appeals in *Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App.1997), chided the Austin Court of Appeals for having made, to-wit:

> Although the Court of Appeals claimed to have applied the "totality of the circumstances test," after reviewing the opinion we find that the Court actually examined each fact *independently* and found that none of the facts standing alone were sufficient to warrant a finding of probable cause. The court [sic] should have determined whether the facts, when taken as a whole, were sufficient to give the officers probable cause to arrest appellant. [emphasis added]

In examining the facts in *Guzman* which were held, under the totality of circumstances test, to be sufficient to provide the police with probable cause for Guzman's arrest, I cannot see any meaningful difference from those existing in the instant case. In *Guzman,* the police observed what they believed to be an unlawful drug sale and ultimately detained the previously unknown "seller." *Id.* at 86. This individual was clearly *not* a "known informant used on many occasions by police to have provided reliable information in the past."

At any rate, the "seller" told the officers he knew where they could "get a lot more heroin." *Id.* The "seller" then provided the officers with a description of appellant and stated that he ("seller") had personally seen appellant with balloons of heroin in his mouth earlier. *Id.* Shortly thereafter, appellant was spotted walking nearby by the police. *Id.* I now quote directly from the Court's opinion describing what occurred next:

> Officer Cardenas testified that the officers then began walking hurriedly towards appellant, saying, "Hey, stop." Cardenas stated that appellant "kind of turned and looked at us and started walking a little faster." Officer Cardenas testified that at that time he asked appellant what he had in his mouth. Cardenas testified that as the officers ran up to appellant, appellant began swallowing. Cardenas testified that he believed appellant was swallowing balloons of heroin. Cardenas testified he then grabbed appellant around his throat and ordered him to "spit it out." [A footnote at this point provides that the State conceded that appellant was arrested when the officer seized him by the throat.]

*Id.*

The opinion then goes on to state that after Cardenas "squeezed harder" Guzman spit out three small balloons containing heroin. I will now move to the Court's analysis of the above-described facts in light of the totality of the circumstances test:

> Each search and seizure question must turn on the facts of that particular case. Our analysis of the facts surrounding this arrest begins with the informant telling the officer that he knew where a lot more heroin could be found. The informant described appellant's appearance and told the officers that he

2. We are mindful that the Court of Criminal Appeals has abandoned the "as consistent with innocent activity" construct in articulating reasonable suspicion in *Woods v. State,* 956 S.W.2d 33 (Tex.Crim.App.1997), and do not evoke that construct in any part of our analysis.

would be carrying balloons of heroin in his mouth.

Several factors weigh in favor of the State's argument that the situation quickly escalated to give the officers probable cause to arrest appellant. First, appellant walked hurriedly away from the police when they approached him and asked him what he had in his mouth. This Court has held that avoiding officers is a factor to consider when determining probable cause.

Second, appellant began *overtly swallowing* when the officers questioned him about the contents of his mouth. The Court of Appeals stated in its opinion that, "[s]wallowing ... is a normal body function and is not usually a sign that a person is engaged in criminal activity." This Court has previously upheld arrests under Article 14.01(b) when the officers "personally observed behavior that although not overtly criminal, was, when coupled with the officers' prior knowledge, sufficient to establish probable cause that an offense was then occurring."

Finally, appellant was found in an area that is well-known for drug trafficking. Although this fact alone is insufficient to find probable cause existed, it may become an important factor when considering the totality of the circumstances. Moreover, we can find no legal justification for the Court of Appeals' reliance on the fact that the officers failed to testify "that this was an area frequented only or mostly by drug dealers and users." This statement is overbroad and has never been used by the courts in making a probable cause determination.

*Id.* at 90–91. (citations omitted) (emphasis added).

In *Guzman,* at the point at which Guzman was under arrest, no contraband of any type had been discovered on his person or anywhere which, at least arguably, was under his control. In the instant case, at the point appellant was arrested, Officer

Lawson had in his possession a "cookie" of cocaine which Lawson recognized as usually hauled "in large amounts." It would be reasonable to believe, therefore, that the cookie of cocaine was not for Lynch's personal use. With regard to the fact that Lynch, apparently out of the clear blue, asked Lawson to remove the cookie out of her coat pocket in such a way that appellant could see that she was not giving it wilfully, the majority provides the following analysis:

> Fact nine, the concern of Lynch about her relinquishing the drugs to Lawson and her concern about Leday's interest and attitude about this transaction, while argued as a factor by the State, is indeed, no factor. Lynch's state of mind cannot provide probable cause to arrest Leday for possession of the cocaine found on Lynch.

Contrary to the majority's observation that this is "no factor," it provides some evidence of appellant's knowledge of, as well as some evidence of joint control over, the contraband in Lynch's pocket in that it implies retaliation by appellant toward Lynch if Lynch was seen to have unilaterally given up the cocaine without having first been searched by Lawson. The fact that appellant and Lynch were traveling together, in a vehicle with out-of-state license plates, was just as much, if not more, of a factor than the information provided to officers by the unknown "seller" apparently implicating Guzman in possessing contraband.

Finally, while the majority does recognize that the inconsistent stories of appellant and Lynch is a factor "which could be used to articulate a reasonable suspicion and justify the temporary detention of both," the majority further states that "it is only a factor and cannot by itself produce probable cause that Leday possessed cocaine." Once again, the majority is mistakenly examining each factor independently for probable cause. I readily admit that none of the factors in the instant case, *standing alone,* provide sufficient grounds

for probable cause to arrest appellant. That, however, is not the standard announced in *Guzman*. Indeed, *Guzman* explicitly rejects independent analysis of factors as the standard. *Id.* at 87. The majority apparently finds some significant difference between the "totality of the circumstances" described in *Guzman*, which were held sufficient to supply the police with probable cause for arrest, and the "totality of the circumstances" that exist in the record before us, which the majority holds not sufficient to supply probable cause to arrest appellant. Because I do not, I must dissent.