

## NUMBER 13-23-00522-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

**MELAYNA DIANE HOWARD,**                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                              **Appellee.**

---

### ON APPEAL FROM THE 452ND DISTRICT COURT
### OF EDWARDS COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Silva**
**Memorandum Opinion by Justice Benavides**

After her motion to suppress was denied, appellant Melayna Diane Howard entered an open plea of guilty to human smuggling, a second-degree felony. *See* TEX. PENAL CODE ANN. § 20.05(b). The trial court deferred an adjudication of guilt and placed Howard on community supervision for a period of five years. On appeal, Howard argues by a single issue that her motion to suppress should have been granted because the

officer that conducted the stop leading to her arrest lacked reasonable suspicion. We affirm.

## I.    BACKGROUND[1]

On June 26, 2023, the trial court heard Howard's motion to suppress. Justin Edward Derr, a Texas Department of Public Safety (DPS) trooper involved with DPS's Operation Lone Star efforts, was the sole witness to testify. Trooper Derr explained that, at the time of the hearing, he had been a trooper for approximately two years and eleven months and had been involved in roughly seventy-five arrests for human smuggling over the course of his career.

According to Trooper Derr, on July 24, 2022, Howard's vehicle passed him as he was "on State Highway 55. . . . between Rocksprings and Barksdale." Prior to this, "Lieutenant Papanos," another Operation Lone Star officer, "informed [Trooper Derr] that there was a vehicle that had been put out as a BOLO[2] over Del Rio communications" that matched Howard's vehicle. Lieutenant Papanos further informed Trooper Derr that the vehicle was "suspected of human smuggling due to a suspicious travel pattern in and out of the area," and that Lieutenant Papanos observed the vehicle and "believed the window tint to be too dark."

Trooper Derr testified that law enforcement officers generally determine whether a

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the San Antonio Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2] BOLO stands for "be on the lookout."

2

window's tint may be illegal by "[h]ow well we are able to see into the vehicle." When Trooper Derr spotted Howard's vehicle, he also "believed that the window tint was too dark." Trooper Derr acknowledged that, at the time, he was looking through his own rolled-up window and from behind sunglasses. He did not explain the effect that these factors had on his evaluation of the window tint on Howard's vehicle, although he testified that "you have to know that you are wearing your sunglasses . . . while you're making that observation."

Trooper Derr "also observed other factors" that he believed warranted further investigation. Specifically, "the window tint on the rear of the vehicle [was] very dark, almost completely blacked out." Although he acknowledged that this is perfectly legal, Trooper Derr explained that "it is very common in [his] experience that vehicles that are used for smuggling have dark rear window tint in order to attempt to conceal individuals." There was also a "significant amount of weight located in the rear of the vehicle," so much so that "the top of the tire was very close to the top of the wheel well." Additionally, "the vehicle came registered out of Cleveland, Texas," which is outside of Houston. Trooper Derr explained that in "[a] lot of . . . smuggling events, the vehicles are registered out of heavily-populated areas in Texas such as Houston, Austin, San Antonio, areas like that," and that smugglers may drive a circuitous route through Rocksprings "[t]o avoid border patrol checkpoints." Trooper Derr ultimately testified that he initiated a stop based on the suspected window tint violation, not human smuggling, although he conceded that he learned during the stop that the tint on Howard's windows was within acceptable limits.

The trial court denied Howard's motion to suppress. Howard pleaded guilty and

3

the trial court sentenced her as discussed above. The court later issued findings of fact and conclusions of law in which it found Trooper Derr credible and concluded that "[t]he traffic stop was based on Trooper Derr's reasonable suspicion that the occupant or occupants of the vehicle were engaged in some criminal activity." This appeal ensued.

## II.     REASONABLE SUSPICION

By her sole issue, Howard argues that the trial court erred by finding that reasonable suspicion justified the stop.

### A.     Standard of Review & Applicable Law

"A warrantless traffic stop is a Fourth Amendment seizure that is analogous to temporary detention; thus, it must be justified by reasonable suspicion." *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022). "[R]easonable suspicion exists where the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *Brodnex v. State*, 485 S.W.3d 432, 437 (Tex. Crim. App. 2016) (quoting *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). Cases involving suspected smuggling are no different; "[e]xcept at the border and its functional equivalents, officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain [persons] who may be illegally in the country." *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975); *see Luera v. State*, 561 S.W.2d 497, 499 (Tex. Crim. App. [Panel Op.] 1978) (applying *Brignoni-Ponce*); *Renteria v. State*, 989 S.W.2d 114, 116–18 (Tex. App.—San Antonio 1999, pet.

4

ref'd) (same).

"When making a determination of reasonable suspicion, we consider the totality of the circumstances." *Hardin*, 664 S.W.3d at 872. This means we "must look at all of the facts together to make the reasonable suspicion determination; facts that do not show reasonable suspicion in isolation may do so when combined with other facts." *Loesch v. State*, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997). There is no requirement that the facts giving rise to a detaining officer's reasonable suspicion "must show that the detainee has committed, is committing, or is about to commit, a particular and distinctively identifiable penal offense." *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011). "However, the officer must have more than an inarticulable hunch or mere good-faith suspicion that a crime was in progress." *Brodnex*, 485 S.W.3d at 437. "Moreover, the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, 'the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists.'" *Derichsweiler*, 348 S.W.3d at 914 (internal footnote omitted).

We review a trial court's denial of a motion to suppress for an abuse of discretion under a bifurcated standard of review. *Brodnex*, 485 S.W.3d at 436 (citing *Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010)); *see Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). When, as here, the trial court makes explicit findings of fact, we determine "whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *State v. Kelly*, 204 S.W.3d 808, 818 (Tex.

5

Crim. App. 2006). "We give almost total deference to the trial court's determination of historical facts and review de novo the trial court's application of law to facts not turning on credibility and demeanor." *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). Under this standard of review, "[a] trial court's ruling should be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018).

## B. Analysis

The trial court found Trooper Derr credible and concluded that "[t]he traffic stop was based on Trooper Derr's reasonable suspicion that the occupant or occupants of the vehicle were engaged in some criminal activity." Trooper Derr testified that "[t]he stop was for the window tint violation" because he initially believed that "the front side passenger window" was too dark. *See* TEX. TRANSP. CODE ANN. § 547.613(a)(1). He denied pulling Howard over on suspicion of smuggling. A photograph of Howard's vehicle was admitted into evidence, in which the tint on the front windshield, driver's window, left back passenger window, and part of the front passenger window is observable.

Howard argues that this case is analogous to *Ford*, 158 S.W.3d at 488. At the hearing on the motion to suppress in *Ford*, the trooper testified that he stopped Ford "for following another car too closely . . . in violation of Texas Transportation Code § 545.062(a)." *Id.* at 490; *see* TEX. TRANSP. CODE ANN. § 545.062(a) (providing that an operator of a vehicle "shall, if following another vehicle, maintain an assured clear distance between the two vehicles"). The Texas Court of Criminal Appeals concluded that "without specific, articulable facts, a court has no means in assessing whether [the

6

trooper's] opinion was objectively reasonable" and that "[m]ere opinions are ineffective substitutes for specific, articulable facts in a reasonable-suspicion analysis." *Ford*, 158 S.W.3d at 493. The Court held that the trooper's testimony that Ford was following "too closely" was "conclusory," and therefore it did not give rise to a reasonable suspicion. *Id.* at 490, 493.

*Ford* stands for the proposition that when an officer gives a subjective opinion, it must be supported by specific, articulable facts. *Castro v. State*, 227 S.W.3d 737, 742 (Tex. Crim. App. 2007). Like in *Ford*, Trooper Derr testified that law enforcement believed the vehicle's window tint was "too dark," a subjective opinion that cannot substitute for specific, articulable facts. *See id.* However, unlike in *Ford*, in this case, a photograph of Howard's vehicle was admitted into evidence for the court's consideration. The trial court could have concluded that, upon reviewing the photograph, the suspicion that Howard's window tint was "too dark" was a reasonable one. *See Delafuente v. State*, 414 S.W.3d 173, 178 (Tex. Crim. App. 2013) (distinguishing *Ford* and explaining that although the officer used "a legally meaningful phrase to describe what he saw," he also "provided other facts to support that statement").

Howard points to Trooper Derr's concession that the window tint was legal, but "[t]he fact that the officer ultimately determined the tint was legal does not automatically render the stop unreasonable." *See Kirkland v. State*, 400 S.W.3d 625, 628 (Tex. App.—Beaumont 2013, pet. ref'd). "[R]easonable suspicion 'does not require negating the possibility of innocent conduct.'" *Johnson v. State*, 622 S.W.3d 378, 384–85 (Tex. Crim. App. 2021) (quoting *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 39 (Tex. Crim. App.

2017)).

Nonetheless, even assuming that Trooper Derr's suspicion that the window tint was "too dark" was unsupported by specific, articulable facts, an officer's stated reasons for stopping or arresting an individual are relevant only insofar as they go to his credibility. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). And "whether there was a reasonable suspicion to detain the appellant does not turn on the demeanor or credibility of the witnesses, but on the legal significance of the facts they recounted." *Derichsweiler*, 348 S.W.3d at 913; *State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013) ("[I]f the officer did, in fact, see that the driver was not wearing a seat belt before the stop, then that known fact would support probable cause to stop the driver even though that was not the officer's subjective rationale for the stop."). In cases involving human smuggling, facts that are especially relevant to a determination of whether reasonable suspicion existed include:

1.  the characteristics of the area in which the officer encounters the vehicle,

2.  the proximity to the border,

3.  the usual patterns of traffic on the particular road,

4.  [the] officer's previous experience in detecting illegal entry and smuggling,

5.  information on recent illegal border crossings in the area,

6.  the driver's behavior, such as erratic driving or obvious attempts to evade officers,

7.  physical aspects of the vehicle and the vehicle's load, [and]

8.  an extraordinary number of passengers, their behavior, or persons

8

trying to hide.

See *Saenz v. State*, 842 S.W.2d 286, 289 (Tex. Crim. App. 1992) (citing *Brignoni-Ponce*, 422 U.S. at 885); *Renteria*, 989 S.W.2d at 116–18.

Trooper Derr testified that Lieutenant Papanos reported that Howard's vehicle "was suspected of human smuggling due to a suspicious travel pattern in and out of the area." Trooper Derr explained that this could mean taking "indirect routes through counties along—along the border, maybe coming in from one direction and then leaving and going—going out another. Also using roads that avoid border patrol checkpoints in and out of the area of operation." But Trooper Derr did not explain whether Lieutenant Papanos observed Howard's vehicle engage in all, some, or none of these behaviors. Accordingly, Lieutenant Papanos's opinion that Howard engaged in a "suspicious travel pattern" could not compensate for evidence concerning the formation of that opinion. *See Castro*, 227 S.W.3d at 742; *Ford*, 158 S.W.3d at 493 ("Allowing a police officer's opinion to suffice in specific facts' stead eviscerates *Terry*'s reasonable suspicion protection.").

However, Trooper Derr also explained that: (1) the tint on the back of Howard's vehicle was "almost completely blacked out"; (2) Howard's vehicle was registered out of a town near Houston; (3) the route to Houston was not a direct one; (4) one can "avoid border patrol checkpoints" by driving through Rocksprings instead of taking a more direct route; and (5) the rear of the vehicle was weighed down to the point that "the top of the tire was very close to the top of the wheel well."

Trooper Derr has spent his entire law enforcement career working on crimes of this nature and, according to him, most of these factors are associated with human smuggling events. *See United States v. Cortez*, 449 U.S. 411, 418 (1981) (detailing that

officers may consider "the modes or patterns of operation of certain kinds of lawbreakers" in making their reasonable-suspicion determination). Accordingly, we conclude that, based on the totality of the circumstances, the trial court's conclusion that reasonable suspicion existed to conduct a stop was supported by the evidence. *See Renteria*, 989 S.W.2d at 116–18 (holding that an officer had reasonable suspicion to conduct a stop because "[t]he officer's experience, the time of day and time of year, the vehicle's registration, the behavior of the passenger[,] and the inferences which could be drawn from these facts, all contributed to establishing a reasonable suspicion that appellant was smuggling aliens"). We further conclude that the trial court did not err by denying Howard's motion to suppress. *See Cortez*, 543 S.W.3d at 203.

Thus, we overrule Howard's sole issue.

### III.    CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
22nd day of August, 2024.

10