**Tyrone Keith LEDAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–95–361 CR.**

Court of Appeals of Texas, Beaumont.

Submitted June 1, 1999.

Decided Oct. 27, 1999.

Donald W. Rogers, Jr., Richard Haynes & Associates, P.C., Houston, for appellant.

Daniel Rice, Dist. Atty., Gail Kikawa McConnell, Asst. Dist. Atty., Conroe, for state.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION ON RECONSIDERATION

BURGESS, Justice.

Pursuant to Tex.R.App. P. 50, we withdraw our opinion on remand of August 25, 1999, and substitute the following in its place.

Appellant was convicted of Aggravated Possession of a Controlled Substance. On direct appeal, we affirmed the conviction. *See Leday v. State,* No. 09–95–361–CR (Tex.App.—Beaumont, June 25, 1997) (not designated for publication), 1997 WL 354770. Appellant petitioned for review. In reversing our judgment affirming the conviction, the Court of Criminal Appeals abrogated approximately thirty years of precedent in ultimately holding that a defendant who testifies at the punishment stage of a trial and admits his guilt does not waive appellate review of any error alleged to have occurred during the guilt/innocence stage of the trial. *See Leday v. State,* 983 S.W.2d 713, 721–26 (Tex. Crim.App.1998). This former rule had become known as "the *DeGarmo* doctrine" "[b]ecause of the infamy of the case." *Id.* at 723, n. 14. The Court of Criminal Appeals remanded the case to us for substantive consideration of appellant's complaints regarding the admissibility of the contraband used to prosecute him.

■ The two issues appellant presents to us on remand contend the trial court erred in overruling Leday's motion to suppress because (1) the cocaine seized from Leday and his companion, Ms. Lynch, was "the product of an unreasonable warrantless detention without reasonable suspicion in violation of the Fourth and Fourteenth Amendments," and (2) the cocaine seized from Leday was "the product of an unreasonable warrantless arrest and search of Leday without probable cause in violation of the Fourth and Fourteenth Amendments." The basis for suppressing the contraband as set out in Leday's written motion to suppress provides, "The search and seizure were made without probable cause and without warrant. That the arrest was illegal and without warrant." The deference an appellate court should afford a trial court in reviewing a search and seizure ruling is often "determined by which judicial actor is in a better position to decide the issue." *Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim. App.1997). If the issue involves the credibility of a witness, thereby making the evaluation of that witness's demeanor important, "compelling reasons exist for allowing the trial court to apply the law to

the facts." *Id.* Appellate courts should afford almost total deference to a trial court's determination of historical facts that the record supports, especially when based on the trial court's evaluation of credibility and demeanor. *See id.* at 89. An appellate court "should afford the same amount of deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Id.* However, "appellate courts may review *de novo* 'mixed questions of law and fact' not falling within this category." *Id.* In the instant case, the admissibility of the contraband involved mixed questions of law and fact that did turn, to some extent, on the credibility of Officer Lawson. We therefore afford the trial court deference in its ultimate determination of the historical facts, and decide *de novo* whether the continued detention of Lynch and Leday was reasonable.

The Court of Criminal Appeals set out the facts surrounding the discovery of the contraband as follows:

> The appellant was the passenger in a vehicle which a deputy constable stopped for speeding. The officer's dog, which was trained to detect narcotics, began barking in the officer's car. The driver asked if the dog would bite someone who had cocaine on their person. The officer said no. The driver asked the officer to take a bag out of her coat pocket in such a way that the appellant could see that she was not giving it willfully. The bag contained about 124 grams of "crack" cocaine. The driver and the appellant were arrested and taken to the constable's office. After talking to the driver, the officer searched the appellant's shoes and found about 28 more grams of "crack" cocaine.

*Leday v. State,* 983 S.W.2d at 714.

Appellant does not contend that the initial traffic stop was improper. We will supply any further details as needed as we discuss the issues presented.

The scope of a permissible temporary detention was succinctly set out in *Davis v. State,* 947 S.W.2d 240, 242–45 (Tex.Crim. App.1997). In *Davis,* the Court reiterated the well-recognized rule that an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, and the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Id.* at 244–45. In the instant case, the only evidence before the trial court when it ruled on Leday's suppression motion was the testimony of the arresting officer, Craig Lawson. Lawson's testimony indicates that he observed the vehicle in which Leday was a passenger speeding at about 1:40 a.m. on November 24, 1993. He stopped the vehicle at that time. The vehicle displayed Georgia licence plates. During his conversation with the driver, Ms. Lynch, Lawson noticed that she was "overly nervous" and at one point blurted out something to the effect of, "Don't take us to jail.... We're not criminals." After getting driver's licence and insurance information from Ms. Lynch, Lawson then spoke to Leday. Lawson noted that Leday's responses to questions about the couple's itinerary "did not match" the responses from Lynch.[1] Lawson then requested, and was granted, written consent to search the vehicle from Lynch. The time of the consent was listed at "1:50" a.m. The elapsed time between the time of the traffic stop and the time Ms. Lynch agreed to the search of her vehicle was only ten minutes.

As noted in *Davis,* in a traffic stop situation, an officer may demand identification, a valid driver's license, and proof

---

1. The record does not reflect what the responses were; Lawson says only "[t]here was some discrepancy."

of insurance from the driver. *Davis*, 947 S.W.2d at 245, n. 6. From the record before us, as Lawson was in the course of conducting these routine matters incident to the traffic stop, his suspicions were raised by Lynch's excessive nervousness, her request to Lawson not to take she and Leday to jail, and the inconsistent responses. The continued detention of Lynch and Leday was certainly reasonable up to the point of Lawson's request for consent to search the vehicle, as well as reasonable up to the point when Lynch asked Lawson to retrieve the contraband from her coat. Therefore, for Fourth Amendment purposes, the continued detention of Lynch and Leday was reasonable up to the point that Lynch voluntarily and unexpectedly asked Lawson to retrieve the contraband from her person. Issue one is overruled.

As we appreciate Leday's argument under his second issue, the sole determination is whether probable cause existed for Leday's arrest following Lynch's relinquishment of the cocaine on her person to Lawson. In accordance with the standard of review discussed above, we will defer to the trial court's determination of the historical facts, and decide *de novo* whether the officers had probable cause under the totality of the circumstances to justify a warrantless arrest of Leday.

State law, and not federal law, governs the legality of a state arrest so long as state law does not violate federal constitutional protections against unreasonable searches and seizures. *See Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim.App.1991). To effectuate a full custodial arrest, an officer must have probable cause to believe the person arrested has committed or is committing an offense. *Id.* at 411; *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause to arrest exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe an offense

has been or is being committed. *See Amores*, 816 S.W.2d at 413. The determination of probable cause hinges on " 'the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act.' " *Woodward v. State*, 668 S.W.2d 337, 345 (Tex.Crim.App.1982) (opinion on reh'g)(quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Probable cause requires more than mere suspicion but far less evidence than that needed to support a conviction or to support a finding by a preponderance of the evidence. *See id.* The rule of probable cause seeks to accommodate the sometimes opposing interests of (1) safeguarding citizens from rash and unreasonable police conduct and (2) giving fair leeway to legitimate law enforcement efforts. *Id.* at 345–46.

The State argues "[t]he totality of the circumstances adduced at the motion to suppress hearing in this case show that Deputy Lawson had probable cause to believe that Appellant and Ms. Lynch were involved in hauling large amounts of cocaine." Therefore, the State contends, "Deputy Constable Lawson had probable cause to arrest Appellant as a result of finding a large amount of crack cocaine in the possession of Charmaine Lynch." The facts and circumstances relied upon the State are as follows:

(1) Deputies Lawson and Self lawfully stopped the car in which Appellant was a passenger for speeding 61 miles per hour in a 55 mile per hour zone.

(2) The traffic stop was made at approximately 1:40 a.m.

(3) The driver, Ms. Lynch, and Appellant were the only occupants of the car.

(4) As Ms. Lynch was getting her driver's license, she said to Deputy Lawson something to the effect of "[d]on't take us to jail or something like that. We're not criminals, something pertaining to that."

(5) Deputy Lawson testified that he had made "too many" traffic stops in his career as a law enforcement officer. And, relative to other persons that he had stopped for speeding, Ms. Lynch was "overly nervous."

(6) Deputy Lawson observed that the passenger, Appellant, "kept his eyes glued on us."

(7) Appellant and Ms. Lynch gave Deputy Lawson different versions of where they had been and where they were going.

(8) Ms. Lynch was very nervous after Deputy Lawson explained in response to her questions that he had a drug dog to detect narcotics on Highway 59.

(9) Deputy Lawson related that after Ms. Lynch signed a consent to search form, she asked Deputy Lawson, "Would you take the substance out of the inside of my coat without me having to do it, to give it to you so Mr. Leday would not see her voluntarily.... She was concerned about taking the narcotics out of her coat to give to me. [She said,] 'I'm scared for Tyrone to see me give this to you. Would you take this out of my pocket."

(10) Deputy Lawson took a cookie of crack cocaine out of the inside pocket of Ms. Lynch's coat, a "form [in] which people haul [cocaine] in large amounts."

■ We first note that the majority of the "facts and circumstances ... known to Deputy Lawson," do not even mention any actions of Leday, much less indicate Leday was committing any offense. Only two of the facts relied upon involve any action by Leday—six and seven. Fact six indicates that Leday "kept his eyes glued on us." However, Deputy Lawson did not articulate the significance of that fact nor state that this was unusual or that he drew any inference from this conduct. Merely looking at a police car has been held insufficient to constitute a basis for reasonable suspicion for a detention. *See Rodriguez v. State*, 578 S.W.2d 419, 420 (Tex.Crim. App.1979); *see also Jones v. State*, 567 S.W.2d 209, 211 (Tex.Crim.App. [Panel Op.] 1978)(looking at a police car not out of the ordinary or connected with crime); *Luera v. State*, 561 S.W.2d 497, 499 (Tex. Crim.App. [Panel Op.] 1978)(looking straight ahead and not looking at officers insufficient for a finding of reasonable suspicion); *but see Renteria v. State*, 989 S.W.2d 114 (Tex.App.—San Antonio 1999, rev. ref'd)(agents' testimony that it had been their experience that smugglers would stare straight ahead and not look at officers when their lights were illuminated held sufficient among other factors for determination of reasonable suspicion).

■ Fact seven, the inconsistent stories of Lynch and Leday, is a factor which could be used to articulate a reasonable suspicion and justify the temporary detention of both. *See Fields v. State*, 932 S.W.2d 97, 105 (Tex.App.—Tyler 1996, pet. ref'd). However, here the inconsistent stories must provide more than reasonable suspicion, they must rise to the level of warranting a person of reasonable cause to believe an offense has been or is being committed. We are unable, as was the trial court, to determine the extent of the inconsistency as the record does not contain those "stories."

■ The State places a great deal of reliance on the fact that the amount of cocaine found on Lynch implicates Leday. This reliance on quantity is misplaced. A person's mere proximity or propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause. *See Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). The State also relies heavily upon Lynch's concern about relinquishing the drugs to Lawson and her concern about Leday's interest and attitude about this transaction. However, Lynch's state of mind cannot provide probable cause to arrest Leday for possession of the cocaine found on Lynch.

■ The facts relating to Leday's behavior which could indicate Leday was committing an offense simply do not rise above the level of mere suspicion. *See Woodward*, 668 S.W.2d at 345. "The perceived events must be out of the ordinary, suspicious and tie a suspect with a criminal act." *Stull v. State*, 772 S.W.2d 449, 451 (Tex.Crim.App.1989). We reject the State's position that probable cause to arrest Leday existed merely because Lynch possessed a large amount of crack cocaine. Having reviewed Leday's contentions *de novo*, we find under the totality of the circumstances the deputy did not have probable cause to justify a warrantless arrest of Leday, therefore the seizure was unreasonable.[2] Consequently, the trial court erred in failing to suppress the evidence found as a result of the constitutionally infirm arrest. Point of error two is sustained.

Suffice to say this is a constitutional error and we are unable to determine, beyond a reasonable doubt, it did not contribute to the conviction. *See* TEX. R. APP. P. 44.2(a). The judgment of the trial court is reversed.

### REVERSED AND REMANDED.

WALKER, Chief Justice, dissenting.

While the majority does conduct a proper analysis of the evidence as mandated by the Court in *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App.1997), the majority continues to miss what appears to me to be the essence of the *Guzman* case. After quoting from the court of appeals' opinion as to what *does not* constitute probable cause, the Court of Criminal Appeals provides what seems to be the proper focus, *viz:*

> While this [the court of appeals' statement on what probable cause is not] principle is well-established, the Court failed to appreciate the definition of probable cause. Probable cause exists where the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense. [citation omitted] The determination of the existence of probable cause concerns "the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." [citation omitted] Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence. [citations omitted] The rule of probable cause seeks to accommodate the sometimes opposing interests of safeguarding citizens from rash and unreasonable police conduct and giving fair leeway to legitimate law enforcement efforts. [citation omitted]

*Id.*

It is clear to me that considering the ten facts and circumstances enumerated in the majority's opinion *in their totality*, the arrest of appellant was neither "rash" nor "unreasonable" police conduct. Having in his hand a "cookie" of cocaine and knowing it to be in a form that "people haul in large amounts" required Deputy Lawson to apply "factual and practical considerations of everyday life" in making the ultimate determination that appellant was a joint possessor, along with his traveling companion, of the contraband in question. Clearly Deputy Lawson's arrest of appellant was not the act of a "legal technician," but that of a reasonable and prudent law enforcement officer. I have continually read and re-read the facts and circumstances described in *Guzman* and have compared those to the facts and circumstances in the instant case. I continue to find that, *at the*

---

**2.** We are mindful that the Court of Criminal Appeals has abandoned the "as consistent with innocent activity" construct in articulating reasonable suspicion in *Woods v. State,* 956 S.W.2d 33 (Tex.Crim.App.1997), and do not evoke that construct in any part of our analysis.

*point of the respective arrests,* Deputy Lawson had as much, if not more, "reasonably trustworthy information sufficient to warrant a reasonable person to believe" that appellant was committing the crime of possession of a controlled substance than did Officer Cardenas in *Guzman.* As such, the probable cause standard discussed by the Court of Criminal Appeals in *Guzman* is easily met in the instant case.

Because the majority "fail[s] to appreciate the definition of probable cause," I must issue this dissent.