# NO. 12-23-00253-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *TIMOTHY ROBERTSON,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

The State of Texas appeals the trial court's order granting Appellee Timothy Robertson's motion to suppress.[1]  We affirm.

### BACKGROUND

Appellee was charged by indictment with possession of a controlled substance, namely methamphetamine, in an amount less than one gram.[2]  Before trial, Appellee filed a motion to suppress evidence seized by the Bullard Police Department after stopping him for an expired vehicle registration. In the motion, Appellee argued that any tangible evidence seized, including

---

[1] *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West 2018)  (authorizing State to appeal granting of motion to suppress evidence).

[2] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West Supp. 2023).

methamphetamine, should be suppressed because it was seized "without warrant, probable cause[,] or other lawful authority[,]" in violation of Appellee's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 10, and 19 of the Texas Constitution. The State filed a brief in response to the motion to suppress.

At the hearing on the motion to suppress, Detective Shawn Hays of the Bullard Police Department testified that on July 4, 2021, he was working as private security for a church in Smith County. As Hays was leaving the church, he saw Appellee's vehicle pass, and he testified that Appellee "looked extremely hard to his right, so hard that he almost ran off the roadway, running off onto the median and then correcting back into the roadway." Hays testified, "[i]t appeared that [Appellee] was looking directly at me as he was passing my location." Hays pulled onto the roadway and noticed that Appellee's vehicle pulled over to the side of the road. Believing that Appellee might be impaired or experiencing mechanical issues with his vehicle, Hays went to a turnaround and pulled behind Appellee "to see if maybe he needed some help, if he was broken down, maybe he was having an issue with his car." When Hays entered the turnaround, Appellee "pulled back out on the roadway and continued driving." Hays explained that the circumstances struck him as suspicious.

As Hays drew closer to Appellee's vehicle, he observed that the vehicle's registration was expired. Because Hays was not wearing a vest, he decided not to conduct a traffic stop and instead informed Officer Chad Mikesh of the Bullard Police Department of the traffic violation he observed and provided a description of Appellee's vehicle. Mikesh initiated a traffic stop based upon Appellee's expired registration, and both officers approached Appellee's vehicle. Hays explained that he "was just standing by for officer safety" while Mikesh made contact with Appellee. During the stop, Appellee told Mikesh that he did not have a driver's license and did not have insurance because he recently purchased the car. Hays agreed that he and Mikesh could have arrested Appellee for the expired registration, lack of a driver's license, and lack of insurance. Hays observed that Appellee appeared to be nervous, "was covered in goose bumps[,]" and "was sweating." Based upon Appellee's nervous appearance, sweating, and goose bumps, Hays asked Appellee to step out of the vehicle while Mikesh conducted the rest of the traffic stop and wrote a ticket and warnings to Appellee.

Hays ultimately asked Appellee if he would consent to a search of the vehicle, and after Appellee asked Hays if he could retrieve his wallet from his vehicle and Hays refused due to

2

concerns for officer safety, Appellee denied consent to search.  Hays explained that he then informed Appellee "that he was going to be detained[,]" but Hays immediately clarified and explained, "well, he was currently detained for the traffic stop."  Hays decided to return to his home to retrieve his drug dog, and when he announced his intention to do so and began to walk away, Mikesh handcuffed Appellee and detained him in the patrol vehicle.  After approximately twenty-seven minutes, Hays returned to the traffic stop with his drug dog, read Appellee his *Miranda* rights, and walked the drug dog around the car for an open-air sniff.  The dog alerted at the driver's side door and the front passenger door.  Hays testified that the dog's alert gave him probable cause to search Appellee's vehicle, and upon doing so, Hays and Mikesh found a plastic bag that contained what they believed to be methamphetamine, as well as some of Appellee's credit or debit cards.

During cross-examination, Hays testified that although he was off duty, he was in uniform and driving a marked unit.  According to Hays, upon initiating the traffic stop, Mikesh explained to Appellee that the expired vehicle registration was the reason for the stop.  Mikesh eventually asked Appellee to exit the vehicle, and Mikesh wrote a warning ticket for the expired registration and lack of insurance, as well as a citation for not possessing a valid driver's license.  Mikesh gave the warning tickets and citation to Appellee, and Appellee signed them.  Hays agreed that a person's signature on a citation constitutes a promise to appear in court on a designated date, and no action is necessary on a warning ticket.  Hays explained that once a person "signs the citation and all the documents are handed over to him and the officer says, [']That's it, we're done, you're free to go,['] then at that time . . . you are free to go."  Hays agreed that Appellee was not under arrest, but when asked whether Appellee was free to go, Hays testified, "I wouldn't say he was necessarily free to go at that point.  Reviewing the body cam footage, Officer Mikesh did hand him his paperwork[,] . . . [b]ut he had not given him his copy of the citation yet and informed him that his business was concluded."

Hays testified that he intervened and asked Appellee "if there was anything in the vehicle that we needed to know about" before Mikesh handed the citation to Appellee, but Hays agreed that Appellee "may have turned towards his car, but he was not walking away going to his vehicle as if he was leaving and free to go."  When asked whether the fact that Appellee might have turned toward his car meant that Mikesh had already given him the citation, Hays testified, "Possibly."  The following colloquy between Appellee's counsel and Hays then occurred:

[Defense counsel]: And so, at that point, after he had signed the citations and was free to go, saying that he's going to appear in court, okay, you said detained. You asked him, [c]an I search the car, and he denied you the right to search the car, and you detained him, right?

[Hays]: Correct.

Hays agreed that it took him approximately twenty-seven minutes to retrieve his dog and return to the traffic stop. Hays also testified that asking someone for permission to search a vehicle after giving the person a citation "is not my normal, standard operating procedure[.]" When asked why he sought permission to search Appellee's vehicle, Hays explained,

> The reason why I asked is because I believed at that particular time, given the clues that I observed, the driver['s] reaction when he passed me when I was pulling out, the looking hard to the right, the almost running off the roadway, the pulling over and parking on the side of the road until I passed and turned around and then pulled back out onto the roadway, these reactions that he displayed drew my attention to him during the traffic stop while I was standing there observing everything and speaking with him; goose bumps in 90-degree weather, we're standing there sweating, he's nervous, he has no driver's license, he has no insurance, the registration is out, his story is not really making sense, stating that his wife was following him in a red car. There was no red car around. . . . With all of these things adding up, when Officer Mikesh did not ask for consent to search the vehicle, I did because I believed that there [were] narcotics in the vehicle.

Hays agreed that he did not ask for consent to search the vehicle until after Appellee signed the citation, and Appellee was not under arrest, the traffic violation was over, and Appellee was free to go, but Hays then explained that the traffic stop was not completed until Mikesh "has told [Appellee] he is free to go and handed him everything that he needs[.]" According to Hays, Appellee was "still detained for the traffic stop itself[]" when Hays asked for consent to search the vehicle.

The trial judge signed an order granting Appellee's motion to suppress, in which she made the following findings of fact and conclusions of law: (1) Mikesh stopped Appellee for an expired vehicle registration; (2) during the stop, Mikesh issued a citation to Appellee for not having a valid driver's license and a warning for failing to maintain insurance and having an expired registration; (3) "[o]nce the citation and warnings were issued, the traffic stop was completed[;]" (4) "[a]fter the traffic stop was completed," Hays requested consent to search Appellee's vehicle, and Appellee did not consent, (5) Hays decided to retrieve his drug dog from his home to search Appellee's vehicle; (6) Appellee "was then detained in handcuffs in the back of Officer Mikesh's patrol vehicle 'for officer safety[;]'" (7) Hays retrieved his drug dog and returned to the scene twenty-

4

seven minutes later; (8) the dog alerted on the vehicle, and officers located methamphetamine in the vehicle; and (9) "[b]ecause the traffic stop had concluded at the time the citations were issued to the Defendant, and there was no lawful reason for the extended detention, the Court grants the Defendant's Motion to Suppress." This appeal followed.

## MOTION TO SUPPRESS

In its sole issue, the State argues that the trial court erred by suppressing the evidence because the officers either (1) had probable cause to search Appellee's vehicle incident to arrest or (2) properly detained Appellee while waiting for a drug dog.

### Standards of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020); *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). At a suppression hearing, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When the trial court makes findings of fact, a reviewing court determines whether the evidence, viewed in the light most favorable to the court's ruling, supports those findings. *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013). Unless the trial court's explicit fact findings that are supported by the record are also dispositive of its legal ruling, we review the trial court's legal ruling de novo. *Id*. We will uphold the trial court's ruling on a motion to suppress if it is (1) supported by the record and (2) correct under any theory of law applicable to the case. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013); *Ross*, 32 S.W.3d at 855-56.

### Applicable Law

A warrantless search is reasonable only if it falls within a recognized exception to the requirement for a search warrant. *State v. Villarreal*, 475 S.W.3d 784, 796 (Tex. Crim. App.

2014).  A search incident to a lawful arrest is an established exception to the warrant requirement. ***State v. Sanchez***, 538 S.W.3d 545, 548 (Tex. Crim. App. 2017).  Officers may search a vehicle incident to a lawful arrest in two circumstances: "(1) when the arrestee is unsecured and the area of the vehicle is within his immediate control, or (2) 'when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.'"  ***Id.*** (quoting ***Ariz. v. Gant***, 556 U.S. 332, 335, 129 S. Ct. 1710, 1714, 173 L. Ed. 2d 485 (2009)).

A routine traffic stop closely resembles an investigative detention, and an investigative detention constitutes a seizure.  ***Francis v. State***, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996); ***Johnson v. State***, 365 S.W.3d 484, 488 (Tex. App.—Tyler 2012, no pet.); ***State v. Cardenas***, 36 S.W.3d 243, 246 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).  Thus, a traffic stop must be reasonable under the United States Constitution and the Texas Constitution. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9.  To determine the reasonableness of an investigative detention, we must determine (1) whether the officer's action was justified at its inception and (2) whether it was reasonably related in scope to the circumstances that initially justified the interference.  ***Terry v. Ohio***, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968); ***Davis v. State***, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).  Additionally, an investigative stop may last no longer than necessary to effectuate the purpose of the stop; that is, a police officer must not unduly prolong a detention.  ***Kothe v. State***, 152 S.W.3d 54, 63, 65 (Tex. Crim. App. 2004); ***Powell v. State***, 5 S.W.3d 369, 376 (Tex. App.—Texarkana 1999, pet. ref'd).

> On a routine traffic stop, police officers may request certain information from a driver, such as a driver's license and car registration, and may conduct a computer check on that information.  It is only after this computer check is completed, and the officer knows that this driver has a currently valid license, no outstanding warrants, and the car is not stolen, that the traffic-stop investigation is fully resolved.

***Kothe***, 152 S.W.3d at 63-64 (footnotes omitted).

If, during the course of a valid investigative detention, an officer develops a reasonable suspicion that the detainee is engaged in criminal activity other than a traffic violation, continued detention is justified.  ***Davis***, 947 S.W.2d at 244; ***Powell***, 5 S.W.3d at 377. "Reasonable suspicion" means "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" ***Johnson v. State***, 622 S.W.3d 378, 384 (Tex. Crim. App. 2021) (quoting ***Kansas v. Glover***, 589 U.S. 376, 380, 140 S. Ct. 1183, 1187, 206 L. Ed. 2d 412 (2020)).  Because the reasonable suspicion standard is wholly objective, the subjective intent of the officer

6

conducting the investigation is irrelevant. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). Reasonable suspicion exists when a police officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to suspect that the person detained is, has been, or soon will be engaged in criminal activity. *Jagnathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). "When assessing the existence of reasonable suspicion, a reviewing court must look to the totality of the circumstances to see whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing." *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017). The information available to the officer must support more than a mere hunch or suspicion. *Id.*; *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005). Without reasonable suspicion, an officer cannot continue the detention after concluding the initial investigation. *Cardenas*, 36 S.W.3d at 246. "[O]nce the reason for the stop has been satisfied, the stop may not be used as a fishing expedition for unrelated criminal activity." *Powell*, 5 S.W.3d at 376; *see Davis*, 947 S.W.2d at 243.

A driver's lawful refusal to consent to a search of his vehicle cannot be considered in determining whether the facts gave rise to reasonable suspicion to prolong the traffic stop. *Lall v. State*, 686 S.W.3d 766, 768 (Tex. Crim. App. 2024). In addition, a driver's nervousness, standing alone, has little probative value and "is a weak indicator of hidden narcotics." *McQuarters v. State*, 58 S.W.3d 250, 257 (Tex. App.—Fort Worth 2001, pet. ref'd); *see Lall*, 686 S.W.3d at 767; *Wade v. State*, 422 S.W.3d 661, 670 (Tex. Crim. App. 2013).

**Analysis**

The State contends that the officers either (1) had probable cause to search Appellee's vehicle incident to arrest or (2) properly detained Appellee to await a drug dog because they had reasonable suspicion of other criminal activity. For the reasons explained herein, we reject both of the State's arguments.

We first address the State's contention that the officers had probable to search Appellee's vehicle incident to arrest. Specifically, the State asserts that because the officers had probable cause to arrest Appellee for traffic violations, an objective view of the facts supports the conclusion that when Mikesh handcuffed Appellee and put him in his patrol vehicle, Appellee was under arrest for traffic violations. As discussed above, Hays testified that Mikesh wrote a citation to Appellee for driving without a license and issued warnings for Appellee's lack of insurance and

expired automobile registration, and Appellee signed the documents. In addition, Hays testified that after Appellee denied Hays's request for permission to search his vehicle, Hays informed Appellee that he would be detained, Mikesh handcuffed Appellee and placed Appellee in his patrol vehicle, and Hays returned with the drug dog approximately twenty-seven minutes later. Because Appellee was handcuffed and placed in Mikesh's patrol vehicle, the officers could not have reasonably believed that Appellee was unsecured and had immediate control of any area of his vehicle. *See Sanchez*, 538 S.W.3d at 548.

Hays also testified that although he and Mikesh could have arrested Appellee for the expired vehicle registration or the other traffic violations to which he admitted, they did not do so, and Appellee was not under arrest for the traffic violations. Instead, Mikesh wrote two warning tickets and a citation, and Appellee signed them. Once Appellee signed the warnings and citation, the purpose of the traffic stop ended, and the officers were required to release him absent reasonable suspicion. *See* TEX. TRANSP. CODE ANN. § 543.005 (West 2022) (providing that once driver signs citation indicating promise to appear in court, officer "shall then promptly release the person from custody."); *Sedani v. State*, 848 S.W.2d 314, 318 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (holding that officer lacked probable cause to hold driver after driver signed citations). In the instant case, the officers could not have reasonably believed that they would find evidence of the traffic offenses in Appellee's vehicle. *See Sanchez*, 538 S.W.3d at 548. Hays's testimony supports the trial court's finding that the traffic stop was completed when Mikesh issued the citation and warnings to Appellee. *See Abney*, 394 S.W.3d at 548. For all these reasons, we conclude that the officers' warrantless search of Appellee's vehicle was not conducted incident to arrest.

We now turn to the State's contention that the officers properly detained Appellee to await a drug dog. Hays's observation that the registration on Appellee's vehicle was expired, which he related to Mikesh, provided reasonable suspicion for the traffic stop. *See Rodriguez v. United States*, 575 U.S. 348, 354, 135 S. Ct. 1609, 1614, 191 L. Ed. 2d 492 (2015) (holding that "[a] seizure for a traffic violation justifies a police investigation of that violation."); *Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.); *Strauss v. State*, 121 S.W.3d 486, 490 (Tex. App.—Amarillo 2003, pet. ref'd). However, "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez*, 575 U.S. at 354, 135 S. Ct. at 1614. Unlike routine measures during a traffic stop, such as checking

the driver's license, determining whether there are outstanding warrants for the driver's arrest, and inspecting the automobile's registration and proof of insurance, "a dog sniff is not fairly characterized as part of the officer's traffic mission." *Id*., 575 U.S. at 355-56, 135 S. Ct. at 1615. During a traffic stop, an officer may seek the driver's consent to search the vehicle. *Strauss*, 121 S.W.3d at 491. But when, as here, the driver refuses to consent to a search, continued detention must be supported by reasonable suspicion that some criminal activity exists. *Thomas v. State*, 420 S.W.3d 195, 202-04 (Tex. App.—Amarillo 2013, no pet.); *Simpson v. State*, 29 S.W.3d 324, 328 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

Once Mikesh and Hays concluded their investigation of Appellee's traffic violations, they could not lawfully further detain him absent reasonable suspicion to believe he was committing, or would soon commit, another offense. *See Rodriguez*, 575 U.S. at 350-51, 135 S. Ct. at 1612; *Davis*, 947 S.W.2d at 245-46; *Powell*, 5 S.W.3d at 377. Because Appellee established that Mikesh and Hays searched his vehicle without a warrant, the State bore the burden of eliciting testimony demonstrating that sufficient facts existed to create reasonable suspicion. *See Sieffert v. State*, 290 S.W.3d 478, 484 (Tex. App.—Amarillo 2009, no pet.) (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). In determining whether reasonable suspicion existed for prolonging the traffic stop, "we give due weight not to the officer's inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences he was entitled to draw from the facts in light of his experience." *Id*. We look to whether there was an objectively justifiable basis for the continued detention, not to the arresting officer's actual, subjective intent. *Derichsweiler*, 348 S.W.3d at 914.

As discussed above, Hays testified that Appellee's staring at him, almost running off the road, pulling his vehicle onto the shoulder, and reentering the roadway after seeing Hays enter a turnaround made him suspicious, and when he saw the expired registration on Appellee's vehicle, he related his observations to Mikesh and assisted Mikesh with the traffic stop. Hays also testified that during the stop, Appellee appeared to be nervous, was simultaneously sweating and covered in goose bumps, and recounted an odd story about his wife following him in a red vehicle. Hays explained, "With all of these things adding up, when Officer Mikesh did not ask for consent to search the vehicle, I did because I believed that there [were] narcotics in the vehicle."

A driver or pedestrian looking in the direction of a police car, standing alone, does not give rise to reasonable suspicion. *Rodriguez v. State*, 578 S.W.2d 419, 419-20 (Tex. Crim. App. [Panel

Op.] 1979); ***Leday v. State***, 3 S.W.3d 667, 672 (Tex. App.—Beaumont 1999, pet. ref'd). In addition, "[a]lthough nervousness alone is not sufficient to establish reasonable suspicion for an investigative detention, it can do so in combination with other factors." ***Hamal***, 390 S.W.3d at 308 (footnotes omitted). Considering the totality of the circumstances known to the officers, including Appellee's staring at Hays, almost striking a median, pulling onto the roadside, almost running off the road, sweating, being covered in goosebumps, driving without a license or insurance, and having an expired vehicle registration, we conclude that Hays and Mikesh lacked reasonable suspicion to further detain Appellee after he signed the citation and warnings. *See* ***Jagnathan***, 479 S.W.3d at 247; ***Derichsweiler***, 348 S.W.3d at 914; ***Rodriguez***, 578 S.W.3d at 419-20; ***Hamal***, 390 S.W.3d at 308; ***Leday***, 3 S.W.3d at 672. The aforementioned circumstances, considered in totality, do not constitute specific, articulable facts that, combined with rational inferences therefrom, would reasonably lead the officers to conclude that Appellee was, had been, or soon would be engaging in criminal activity. *See* ***Jagnathan***, 479 S.W.3d at 247; ***Derichsweiler***, 348 S.W.3d at 914; ***Sieffert***, 290 S.W.3d at 484. In other words, the information available to the officers does not support more than a mere hunch or suspicion. *See* ***Ramirez-Tamayo***, 537 S.W.3d at 36; ***Brother***, 166 S.W.3d at 257. Viewing the evidence in the light most favorable to the trial court's findings, we conclude the record supports the trial court's finding that the traffic stop ended when Mikesh issued the warnings and citations, and the trial court correctly concluded that "there was no lawful reason for the extended detention[.]" *See* ***Rodriguez***, 575 U.S. at 350-51, 135 S. Ct. at 1612; ***Abney***, 394 S.W.3d at 548; ***Sieffert***, 290 S.W.3d at 487 (holding that traffic stop was illegally prolonged without reasonable suspicion when officer testified that vehicle was driving slowly through high-crime area and driver was nervous); ***Powell***, 5 S.W.3d at 377. Accordingly, the trial court did not err by granting Appellee's motion to suppress. We overrule the State's sole issue.

### DISPOSITION

Having overruled the State's sole issue, we ***affirm*** the trial court's order granting Appellee's motion to suppress.

**BRIAN HOYLE**
Justice

Opinion delivered May 22, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 22, 2024**

**NO. 12-23-00253-CR**

**THE STATE OF TEXAS,**
Appellant
V.
**TIMOTHY ROBERTSON,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-2190-22)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*